WILLOW CREEK RANCH, L.L.C., Plaintiff-Appellant-Petitioner,†

v.

TOWN OF SHELBY and County of LaCrosse, Defendants-Respondents.

WILLOW CREEK RANCH, L.L.C., Plaintiff-Appellant-Petitioner,†

v.

TOWN OF SHELBY, County of LaCrosse, and Wisconsin Municipal Mutual Insurance Company, Defendants-Respondents.

Supreme Court

*Nos. 97–2075, 98–0138. Oral argument October 6, 1999.—Decided June 20, 2000.*

2000 WI 56

(Also reported in 611 N.W.2d 693.)

†Motion for reconsideration denied September 20, 2000.

411

For the plaintiff-appellant-petitioner there were briefs by *James R. Koby, Julie A. Mougin* and *Parke O'Flaherty, Ltd.*, LaCrosse and oral argument by *James R. Koby*.

For the defendant-respondent, Town of Shelby, there was a brief by *William W. Ehrke* and *Crivello, Carlson, Mentkowski & Steeves, S.C.*, Milwaukee and oral argument by *William W. Ehrke*.

For the defendant-respondent, County of LaCrosse there was a brief by *David L. Lange*, Deputy Corporation Counsel, LaCrosse and oral argument *David L. Lange*.

For the defendant-respondent, Wisconsin Municipal Mutual Insurance Company, there was a brief by *Bradley D. Armstrong, Steven A. Brezinski* and *Axley*

*Brynelson, LLP*, Madison and oral argument by *Steven A. Brezinski.*

¶ 1. ANN WALSH BRADLEY, J. Willow Creek Ranch (Willow Creek) seeks review of a published decision of the court of appeals that in these consolidated cases affirmed summary judgments in favor of the Town of Shelby (Town), the County of La Crosse (County), and Wisconsin Municipal Mutual Insurance Company (WMMIC).[1] Willow Creek contends that the Wisconsin Department of Natural Resources (DNR) has the exclusive authority to regulate the operation of a game bird farm and that the actions of the Town and the County in regulating the zoning of Willow Creek's game bird farm were illegal and unconstitutional.

¶ 2. We conclude that the DNR's statutory authority does not preclude the authority of the Town and the County to regulate the zoning of Willow Creek's game bird farm. We further conclude that the Town's and the County's actions are immune from suit under Wis. Stat. § 893.80(4) (1995–96)[2] and that the actions are legal and constitutional. Finally, we determine that the Town and County are not equitably estopped from asserting immunity as a defense or preventing the operation of Willow Creek's game bird farm. Accordingly, we affirm the court of appeals.

¶ 3. Willow Creek owns 115 acres of land in the Town of Shelby, La Crosse County. Willow Creek's

---

[1] *Willow Creek Ranch, L.L.C. v. Town of Shelby*, 224 Wis. 2d 269, 592 N.W.2d 15 (Ct. App. 1998) (consolidated appeal affirming orders of summary judgment by La Crosse County Circuit Court, Dennis G. Montabon, J. and Michael Mulroy, J.).

[2] Unless otherwise indicated, all future references to the Wisconsin Statutes are to the 1995–96 volumes.

property is zoned as an "Exclusive Agricultural" district (Agricultural A) under La Crosse County Zoning Ordinance § 17.34. Agricultural A district uses are limited to specific agricultural activities, while Agricultural B district uses include activities that are more commercial in nature. The County has the authority to enact and enforce zoning ordinances while the Town has the power to veto a county zoning change.

¶ 4. In late 1993, Willow Creek contacted the Town to inquire whether a zoning change was required to operate a game bird farm on its property. The Town chairperson, Jeff Brudos, allegedly informed Willow Creek that no county rezoning was needed for Willow Creek's operation of a game bird farm.[3] Shortly prior to the opening of the farm in late 1994, and after already having expended substantial sums of money, Willow Creek obtained a DNR license.[4]

---

[3] Although the Town and County dispute the sequence of events leading to the citation of Willow Creek's game bird farm, for the purposes of summary judgment they accept the facts as true.

[4] The record is unclear as to exactly when the DNR issued Willow Creek a license to operate a game bird farm. One of the affidavits submitted by Willow Creek, as well as its complaint, alleges that the license was issued in June 1994, yet another affidavit alleges that the license was issued in October 1994. The record contains numerous copies of the October 1994 license, as well two subsequent ones, yet it is devoid of any June license.

Regardless of whether the DNR issued a license in June or October, Willow Creek expended substantial sums to establish its game bird farm after initially meeting with Brudos in late 1993, without even having received a DNR license authorizing the operation of the farm. The record indicates that the game bird farm opened either in late September or early October,

¶ 5. In 1995, the County notified Willow Creek that because it was conducting a commercial hunting enterprise on property zoned exclusively for agricultural purposes, it needed to petition for rezoning. Subsequently, Willow Creek petitioned the County to rezone its property to Agricultural B. Willow Creek also met with the Town to discuss the possibility of obtaining a conditional use permit that would enable it to continue operation as Agricultural A property. The County and Brudos instructed Willow Creek to follow several conditions to guarantee the safe operation of the game bird farm. Willow Creek agreed to follow those conditions and took steps to ensure compliance.

¶ 6. The County informed Willow Creek in December 1995 that it should cease operation pending the resolution of the zoning issues. However, a month later, the County allowed Willow Creek temporarily to resume operation. Responding to citizen concerns about safety and noise from the operation of the game bird farm, the Town passed a resolution in February 1996 indicating that it would neither approve the rezoning of Willow Creek's property nor grant a conditional use permit.

¶ 7. Although the County granted Willow Creek's petition for rezoning in March, the Town vetoed the County's decision consistent with the Town's prior resolution against rezoning and a conditional use permit. Subsequently, the County issued Willow Creek a citation for violating the County's zoning ordinance by conducting commercial hunting activities on property zoned exclusively for agricultural purposes.

---

after Willow Creek asserts that it invested $340,000 in preparation.

¶ 8. In May 1996, Willow Creek filed the first of two suits, seeking a declaratory judgment that the Town and County had acted in excess of their authority and had exercised their powers in an arbitrary and unconstitutional manner. In addition to the declaratory judgment, Willow Creek requested an injunction prohibiting the Town and County from taking further action in interference with the operation of its game bird farm. It also argued that the Town and County should be equitably estopped from preventing the operation of the game bird farm, because Willow Creek had relied to its detriment upon the misrepresentations of Town Chairperson, Jeff Brudos.

¶ 9. The Town and County moved for summary judgment asserting that they had acted according to their statutory authority in deciding to enforce the zoning ordinance and to veto Willow Creek's petition to rezone. They also argued that the DNR's authority to issue a license for the operation of a game bird farm did not preclude the County's authority to devise and enforce zoning ordinances.

¶ 10. Subsequently, Willow Creek filed a notice of claim with the Town and County pursuant to Wis. Stat. § 893.80(1), making a formal demand for money damages. Upon the disallowance of its claims, Willow Creek filed a second suit raising essentially the same issues as in its first suit but this time seeking money damages.

¶ 11. In July 1997, the circuit court granted the Town's and the County's motions for summary judgment and dismissed Willow Creek's first suit. Subsequently, the Town, the County, and its insurer, WMMIC, moved for summary judgment on the second suit, arguing that claim preclusion barred Willow Creek's second suit and that the Town and County

were immune from liability under Wis. Stat. § 893.80(4) because their actions represented discretionary acts. In December 1997, the circuit court dismissed Willow Creek's second suit and granted the motions for summary judgment. Willow Creek appealed both summary judgments, and the appeals were consolidated.

¶ 12. The court of appeals determined that although the DNR has the statutory authority to regulate game farms, its licensing authority does not preclude the Town and County from creating and enforcing zoning ordinances. In addition, the court concluded that the Town and County did not act arbitrarily or in excess of their statutory authority by issuing Willow Creek a citation for operating its game bird farm on property zoned exclusively for agricultural purposes. The court also concluded that the Town and County are immune from liability under Wis. Stat. § 893.80(4).

¶ 13. When we review motions for summary judgment, we follow the same methodology as does the circuit court. *Grams v. Boss*, 97 Wis. 2d 332, 337–39, 294 N.W.2d 473 (1980). If there is no genuine issue of material fact and a party is entitled to judgment as a matter of law, the resolution of the action is appropriate for summary judgment. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987).

¶ 14. Our initial inquiry of whether the DNR's authority to regulate the operation of game farms prevents the Town and County from regulating the zoning of Willow Creek's game bird farm involves a matter of statutory interpretation and presents a question of law. *Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320,

327, 548 N.W.2d 519 (1996). Likewise, our subsequent inquiries of immunity and equitable estoppel present questions of law. *Kimps v. Hill*, 200 Wis. 2d 1, 8, 546 N.W.2d 151 (1996); *Harms v. Harms*, 174 Wis. 2d 780, 784, 498 N.W.2d 229 (1993). This court reviews questions of law independently of the determinations of the circuit court and the court of appeals, while benefiting from their analyses. *Miller v. Thomack*, 210 Wis. 2d 650, 658, 563 N.W.2d 891 (1997).

## *Licensing v. Zoning Authority*

¶ 15. We address first whether the DNR's authority to regulate the operation of game farms under Wis. Stat. § 29.574 and Wis. Admin. Code NR § 16.02 prevents the Town and County from regulating the zoning of Willow Creek's game bird farm.[5] If we decide that the DNR's authority to license precludes

---

[5] Wisconsin Stat. § 29.574 states in relevant part:

(1) The owner or lessee of any lands within the state suitable for the breeding and propagating of game, birds or animals as may be approved by the department shall have the right upon complying with this section, to establish, operate and maintain a game bird and animal farm for the purpose of breeding, propagating, killing and selling game birds and game animals on such lands. . . .

Wisconsin Admin. Code NR § 16.02 contains essentially the same language as Wis. Stat. § 29.574 and states in relevant part:

(1) Application. This section applies to all game farms as provided in s. 29.867, Stats., including. . .shooting game farms. . . . The owner or lessee. . .shall have the right upon complying with this section to establish, operate and maintain a game bird and animal farm. . . .

Chapter 29 of the Wisconsin Statutes was renumbered and revised by 1997 Wis. Act 248. The former § 29.574 has been renumbered as § 29.867. This change does not affect our analysis.

the zoning authority of the Town and the County, we need not address the remaining issues raised by Willow Creek on this appeal.

¶ 16. Willow Creek maintains that because the regulation of game farms lies within the exclusive province of the DNR, the Town and County had no authority to restrict the operation of Willow Creek's farm through the enforcement of the County zoning ordinance and the veto of Willow Creek's rezoning petition. We disagree. The location of game bird farms remains subject to local zoning rules, notwithstanding a DNR license granting an owner the right to establish such a farm.

■

¶ 17. Municipal bodies have only such powers as are expressly conferred upon them by the legislature or are necessarily implied from the powers conferred. *First Wis. Nat'l Bank of Milwaukee v. Town of Catawba*, 183 Wis. 220, 224, 197 N.W. 1013 (1924). Wisconsin Stat. § 29.574 provides for the licensing of "game bird and animal" farms and gives the DNR the right to establish such farms. Nothing in the text of the statute explicitly allows local regulation of game bird farms.

¶ 18. In comparison, Wis. Stat. § 29.425(3)(c) grants municipal bodies the power to prohibit the sale of "live game animals."[6] Chapter 29, however, demonstrates the legislature's conscious attempt to distinguish between "game birds" and "game animals," for they are defined separately under Wis. Stat.

---

[6] Wisconsin Stat. § 29.425(3)(c) states in relevant part:

The governing body of any county, city, village or town may, by ordinance, prohibit the sale of any live game animal or fur-bearing animal.

§ 29.01.[7] While § 29.425 evinces the intent to grant local control of the sale of game animals, the same is not true of game birds. Thus, we cannot conclude that there is explicit local authority under Chapter 29 to regulate the operation of game bird farms. *See Ball v. Dist. No. 4, Area Bd.*, 117 Wis. 2d 529, 539, 345 N.W.2d 389 (1984) (legislature presumed to have known the words it has chosen).

¶ 19. However, lack of such explicit authority under Chapter 29 is not fatal. County boards are granted broad zoning authority under Wis. Stat. § 59.69(4) to effectuate the purpose of promoting public health, safety, convenience, and general welfare as provided in § 59.69(1). Specifically, § 59.69(4) states in relevant part:

> For the purpose of promoting the public health, safety and general welfare the board may by ordinance effective within the areas within such county outside the limits of incorporated villages and cities establish districts of such number, shape and area, and adopt such regulations for each such district as the board considers best suited to carry out the purposes of this section. The powers granted by this section shall be exercised through an ordinance which may, subject to sub. (4e), determine, establish, regulate and restrict:

[7] Wisconsin Stat. § 29.01(6) defines "[g]ame animals" as including "deer, moose, elk, bear, rabbits, squirrels, fox and raccoon."

Wisconsin Stat. § 29.01(7) defines "[g]ame birds" as including "[w]ild geese, brant, wild ducks. . .pheasants. . .quail, California quail, and wild turkey."

(a) *The areas* within which agriculture, forestry, industry, mining, trades, business and recreation may be conducted (emphasis added).

Furthermore, towns have the authority to disapprove or veto particular zoning amendments recommended by county boards. Wis. Stat. § 59.69(5)(e)6.

¶ 20. Willow Creek argues that the County zoning ordinance is invalid because a municipality may not pass ordinances that infringe upon the spirit of a state law or are repugnant to the general policy of the state. *County of Dane v. Norman*, 174 Wis. 2d 683, 689, 497 N.W.2d 714 (1993). Furthermore, when the state has manifested an intent to regulate a specific field or subject, conflicting municipal ordinances on the same subject are invalid to the extent of the conflict. *DeRosso Landfill Co. v. City of Oak Creek*, 200 Wis. 2d 642, 651, 547 N.W.2d 770 (1996).

¶ 21. We are not persuaded by the authority Willow Creek offers for its proposition that the County's zoning ordinance conflicts with the state's exclusive control over hunting and with the DNR's exclusive right to grant licenses to conduct such hunting activities on game farms under Wis. Stat. § 29.574. *See, e.g., DeRosso Landfill Co.*, 200 Wis. 2d at 664 (local ordinance conflicting with state policy exempting clean fill facilities from local approval); *Wisconsin's Envtl. Decade, Inc. v. DNR*, 85 Wis. 2d 518, 271 N.W.2d 69 (1978) (city resolution repudiating chemical treatment of city lakes inconsistent with state statutes); *Krenz v. Nichols*, 197 Wis. 394, 222 N.W. 300 (1928) (state's broad authority to regulate hunting and disposition of fish and game).

¶ 22. These cases do not address the interaction of zoning ordinances and state-regulated activity.

Rather they involve local ordinances that attempt to regulate the identical activity as the state and that are "diametrically opposed" to the state's policy. *Wisconsin's Envtl. Decade,* 85 Wis. 2d at 535. While we agree that the DNR has the exclusive right to license the operation of game bird farms, this right does not preclude the Town and County from regulating the zoning of such farms. Zoning and licensing powers represent distinct powers that do not conflict with each other.

¶ 23. In this case, the purpose of the County zoning ordinance involves demarcating the appropriate areas or location where a game bird farm may operate. It does not directly regulate the operation of the game bird farm. Because the power to zone does not conflict with the right to issue a license for a specific activity, the DNR's authority to grant licenses to establish game bird farms does not prevent the Town and County from regulating the zoning of these farms by enforcing ordinances and vetoing specific zoning changes.

*Immunity*

¶ 24. Having determined that the DNR's authority to license the operation of game farms does not preclude the authority of the Town and the County to regulate zoning, we examine next whether Wis. Stat. § 893.80(4) grants immunity to their actions in preventing the operation of Willow Creek's game bird farm. Willow Creek maintains that the actions of the Town and the County do not represent discretionary acts, but rather ministerial acts for which they are not immune.

¶ 25. Under Wis. Stat. § 893.80(4), a municipality is immune from "any suit" for "acts done in the exercise of legislative, quasi-legislative, judicial or

quasi-judicial functions."[8] These functions are synonymous with discretionary acts. *Lifer v. Raymond*, 80 Wis. 2d 503, 511–12, 259 N.W.2d 537 (1977). A discretionary act involves the exercise of judgment in the application of a rule to specific facts. *Id.* at 512.

¶ 26. This court has recognized four exceptions to governmental immunity under Wis. Stat. § 893.80(4). In *Kierstyn v. Racine Unified Sch. Dist.*, 228 Wis. 2d 81, 90–97, 596 N.W.2d 417 (1999), we noted that immunity does not apply to the performance of: (1) ministerial duties; (2) duties to address a "known danger;" (3) actions involving medical discretion (the *Scarpaci* rule); and (4) actions that are "malicious, willful, and intentional." The only exception advanced by Willow Creek in the present case is the performance of a ministerial duty, and therefore we need not address the remaining three exceptions to immunity under Wis. Stat. § 893.80(4).

¶ 27. A ministerial act, in contrast to an immune discretionary act, involves a duty that "is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *C.L. v. Olson*, 143 Wis. 2d 701, 711–12,

---

[8] Wisconsin Stat. § 893.80(4) states in full:

(4) No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employes nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

422 N.W.2d 614 (1988) (quoting *Lister v. Board of Regents*, 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976)).

¶ 28. Decisions to enforce a zoning ordinance and to veto zoning changes represent legislative acts. *Quinn v. Town of Dodgeville*, 122 Wis. 2d 570, 578, 364 N.W.2d 149 (1985). Thus, they are discretionary decisions subject to the immunity provisions. *Beres v. City of New Berlin*, 34 Wis. 2d 229, 232, 148 N.W.2d 653 (1967). Although Willow Creek concedes that the decision to enact a zoning ordinance represents a discretionary act, it maintains that the Town and County had a ministerial duty to defer to the state's exclusive authority to license and regulate game farms. According to Willow Creek, the Town and County breached their ministerial duty by exercising the discretion to enforce the zoning ordinance and to veto Willow Creek's rezoning petition in opposition to the state's exclusive authority.

¶ 29. However, we have already determined that the DNR's authority to license game farms does not preclude the Town and County from regulating zoning by enforcing zoning ordinances and vetoing zoning changes. Thus, Willow Creek has failed to demonstrate an absolute and certain ministerial duty to defer to the state. In fact, when considering the zoning of the Willow Creek property, the Town and County have no duty whatsoever to defer to the state.

¶ 30. Rather, the decisions to veto Willow Creek's rezoning petition and to enforce the County zoning ordinance by issuing a citation represent purely discretionary acts.[9] Without Willow Creek's articulation of a

[9] The dissent notes that the distinction between ministerial and discretionary functions is ill-defined and perhaps artificial.

specific ministerial duty and its subsequent breach, we conclude that the immunity provisions apply to the Town and County against Willow Creek's claim for money damages.

¶ 31. Not only does immunity under Wis. Stat. § 893.80(4) bar Willow Creek's suit against the Town and County for money damages, it also precludes suit in this instance for injunctive relief. *Johnson v. City of Edgerton*, 207 Wis. 2d 343, 352, 558 N.W.2d 653 (Ct. App. 1996). In *Johnson*, the plaintiff property owners sued the city for injunctive relief and damages for the city's refusal to open the unimproved "stub-end" of a city street so that the plaintiffs could gain access to their property. *Id.* at 345. The court held that the official immunity provisions of Wis. Stat. § 893.80(4) are not limited to money damages or tort actions, but apply as well to actions seeking injunctive relief against municipalities and their employees. *Id.* at 352.[10]

---

*See* Dissent at ¶ 129, ¶ 136 (quoting 18 McQuillin, *Municipal Corporations* (3d ed.) at § 53.04.10). The dissent also states that this court last addressed the distinction in *Kierstyn v. Racine Unified Sch. Dist.*, 228 Wis. 2d 81, 596 N.W.2d 417 (1999). However, we refer the dissent to this court's recent decision in *State ex rel. J.H. Findorff & Son v. Circuit Court for Milwaukee County*, 2000 WI 30, 233 Wis. 2d 428, 608 N.W.2d 679, in which the majority of the court affirmed the vitality of the distinction between ministerial and discretionary acts by adopting it in the wholly separate context of judicial substitution.

[10] The concurring opinion of the court of appeals' decision expresses concern over the broad reach of *Johnson*, particularly in its applicability to cases in which equitable estoppel may lie against a municipality so as to enjoin its enforcement of an ordinance. *See Willow Creek*, 224 Wis. 2d at 286–87. However, since we determine below that the actions of Town Chairperson, Jeff Brudos, do not afford a basis for equitable estoppel in this

¶ 32. The dissent attempts to establish that *Johnson* represents precedent with a dubious legal foundation that should be overruled, not "consecrated," by this court. Reasoning that the reach of *Johnson* is indiscriminately broad, the dissent asserts that immunity under Wis. Stat. § 893.80(4) was never intended to extend to injunctive relief based in tort, but rather was to be limited to money damages in tort.

¶ 33. The "any suit" language contained in the immunity statute, however, does not limit suits to money damages in tort but also encompasses injunctive relief based in tort. This interpretation furthers the policy rationales underlying tort immunity that officials not be "unduly hampered or intimidated in the discharge of their functions by threat of lawsuit or personal liability." *Scarpaci v. Milwaukee County*, 96 Wis. 2d 663, 682, 292 N.W.2d 816 (1980) (citing *Lister v. Board of Regents*, 72 Wis. 2d 282, 299, 240 N.W.2d 610 (1976)). The concerns over the expenditure of both time and resources apply with equal force to actions seeking injunctive relief as they do to actions for money damages. We recognize, however, that the suits must be based in tort to garner the protection of immunity consistent with the statute.

¶ 34. We agree with the dissent that the language in *Johnson* may have been overly expansive, reaching beyond actions based in tort to encompass contract and other actions as well. However, we note that the actual narrow issue presented before the *Johnson* court was whether the plaintiffs were permitted to seek injunctive relief based on their claim of negligence against the city. Thus, the *Johnson* court essentially addressed the applicability of Wis. Stat.

case, we leave resolution of the concurring opinion's concern for another day.

§ 893.80(4) to injunctive relief based in tort, concluding that the municipality's assertion of immunity barred such relief. To the extent that the language in *Johnson* suggests otherwise by expanding immunity too broadly, we limit that language.

■

¶ 35. In this respect, our rationale is consistent with *Energy Complexes v. Eau Claire County*, 152 Wis. 2d 453, 466, 449 N.W.2d 35 (1989), which held that Wis. Stat. § 893.80(4) does not grant immunity to actions based in contract.[11] Here, as in *Johnson*, Willow Creek's claim for injunctive relief is based in tort. Thus, the Town and the County are afforded immunity against Willow Creek's request for an injunction.

¶ 36. Although immunity serves as a bar to both money damages and injunctive relief based in tort, municipalities do not benefit from the shield of immunity in actions seeking declaratory relief. *Schmeling v. Phelps*, 212 Wis. 2d 898, 915, 569 N.W.2d 784 (Ct. App. 1997). The court in *Schmeling* noted that although public policy may require that local officials not be

---

[11] The dissent appears to recognize that the court of appeals in *Johnson* may very well have intended the interpretation we adopt. Dissent at ¶ 93. Yet, according to the dissent, this interpretation would have us read into the statute a "torts-only" limitation on government acts while reading out a "torts-only" limitation on suits. *Id.* We foresee no difficulty with such an interpretation in consideration of the purposes underlying the tort claims statute. Immunity for torts is premised on avoiding the unnecessary hindrance of public officials in performing their official duties. *Scarpaci v. Milwaukee County*, 96 Wis. 2d 663, 682, 292 N.W.2d 816 (1980); *Lister v. Board of Regents*, 72 Wis. 2d 282, 300, 240 N.W.2d 610 (1976). This purpose is served not only by limiting immunity to actions for money damages in tort but also applying immunity to claims for injunctive relief based in tort.

"unduly hamper[ed] or intimidate[d]" in the execution of their discretionary duties, public policy also requires that citizens be afforded the opportunity for a court to declare their rights. *Id.* [12]

¶ 37. In this case, Willow Creek seeks a declaration that it may operate its game bird farm in contravention of the County zoning ordinance because Willow Creek has acquired a DNR license. However, we have already determined that the Town and County have the authority to enforce the zoning ordinance and prevent the operation of Willow Creek's game bird farm, notwithstanding the DNR license granting Willow Creek the right to establish its farm. Therefore, Willow Creek cannot benefit from a declaratory judgment on this basis.

¶ 38. Willow Creek also seeks a declaration that the actions of the Town and the County as to Willow Creek's game bird farm were illegal and unconstitutional. Willow Creek contends that by preventing the operation of its farm, the Town and County unconstitu-

---

[12] Setting forth numerous examples, the dissent argues that extending immunity to claims for injunctive relief based in tort will leave citizens without recourse or remedies for a range of illegal and unfair governmental activity. Dissent at ¶ 87. However, instituting an action for declaratory relief remains an avenue to challenge unfair and arbitrary governmental action. Furthermore, certiorari review under Wis. Stat. § 59.694(10) is available to check arbitrary municipal decisions. The fourth exception to immunity set forth in *Kierstyn*, addressing "malicious, willful and intentional" conduct, also remains to remedy gross municipal wrongdoing. 228 Wis. 2d at 90 n.8 (citations omitted). Finally, an appropriate means to address government gone awry lies with the replacement of government officials through ballot and removal procedures, not with endless litigation in court. *See Lister*, 72 Wis. 2d at 299.

tionally exercised their police powers and applied the zoning ordinance in an arbitrary manner.

¶ 39. In particular, Willow Creek maintains that its game bird farm did not violate the permitted activities under the Agricultural A district and that its farm operated similarly to other farms zoned within the same district. Willow Creek also maintains that the game bird farm did not pose a significant health or safety threat, drawing our attention to a range of safety measures Willow Creek implemented to ensure the safety of its neighbors. Since preventing the operation of the game bird farm will neither promote health nor protect neighboring property owners, Willow Creek argues that the Town's and the County's actions were arbitrary and unconstitutional.

¶ 40. A municipality's zoning decision represents a valid exercise of its police power. *State ex rel. American Oil Co. v. Bessent*, 27 Wis. 2d 537, 540, 135 N.W.2d 317 (1965); *State ex rel. Carter v. Harper*, 182 Wis. 148, 155, 196 N.W. 451 (1923). Since zoning ordinances are enacted for the benefit and welfare of the citizens of a municipality, this court generally affords great deference to zoning decisions. *See Jelinski v. Eggers*, 34 Wis. 2d 85, 93–94, 148 N.W.2d 750 (1967). However, we may declare a zoning ordinance or action unconstitutional when it serves no legitimate purpose and is arbitrary and unreasonable, having no substantial relation to public health or safety. *Kmiec v. Town of Spider Lake*, 60 Wis. 2d 640, 647, 211 N.W.2d 471 (1973). *See also Cushman v. City of Racine*, 39 Wis. 2d 303, 311, 159 N.W.2d 67 (1968).

¶ 41. Both the power to zone and the power to veto a zoning change represent legislative functions.

*Quinn*, 122 Wis. 2d at 578. Judicial review of legislative functions is limited to cases in which the authority acted in excess of its power or under error of law. *Buhler v. Racine County*, 33 Wis. 2d 137, 146, 146 N.W.2d 403 (1966). Although this court may debate the wisdom or the desirability of a particular zoning decision, we are constrained from substituting our judgment for that of the zoning authority. *Bessent*, 27 Wis. 2d at 546. This rule applies not only to decisions as to the necessity of zoning but also to decisions as to the determination of whether a change in circumstances justifies rezoning. *Buhler*, 33 Wis. 2d at 147.

¶ 42. An Agricultural A district provides for a wide range of agricultural activities, including "[f]orest and game management." La Crosse Zoning Ordinance § 17.34(1)(c)(6). An Agricultural B district allows for "riding and shooting clubs" and other parks of a more commercial nature. La Crosse Zoning Ordinance § 17.37(1)(l). Arguably, Willow Creek's game bird farm may belong in either agricultural district. However, we may not substitute our judgment for that of the zoning authority if there is any "reasonable basis" for the action taken. *Jefferson County v. Timmel*, 261 Wis. 39, 62–63, 51 N.W.2d 518 (1952).

¶ 43. The County determined that the operation of Willow Creek's game bird farm was more consistent with the uses of an Agricultural B district. According to the County, it was crucial to preserve the exclusively agricultural character of the Agricultural A district by disallowing commercial activities within that district. Because there was a reasonable basis underlying the County's determination that Willow Creek's property was better suited for the Agricultural B district, we

conclude that the County did not act in an arbitrary or unconstitutional manner.

██

¶ 44. Similarly, the Town and County did not act in excess of their power in preventing the operation of Willow Creek's game bird farm based on the reasoning that such action was necessary to protect the health and safety of the community. While it is true that Willow Creek implemented several safety measures to ensure the health and safety of its neighbors, we cannot conclude from the record that the Town and County acted arbitrarily in determining that the operation of the game bird farm would nevertheless pose a health and safety threat. Absent evidence of arbitrary action, which Willow Creek has failed to produce, we will not substitute our judgment for that of the Town or County. *Buhler*, 33 Wis. 2d at 146–47.

¶ 45. Willow Creek also maintains that by denying its petition to rezone to an Agricultural B district, while granting a similar petition to the La Crosse Rifle Club, the Town and the County acted arbitrarily and in excess of their authority. In our determination of whether the denial of Willow Creek's petition constituted an arbitrary and unreasonable action by the Town and the County, we are guided by the analysis in *Schmeling v. Phelps*, 212 Wis. 2d 898, 569 N.W.2d 784 (Ct. App. 1997).

¶ 46. The landowner in *Schmeling* sought a declaratory judgment invalidating the veto of his petition to rezone. *Id.* at 903. In particular, the landowner argued that the county executive had acted arbitrarily because he had failed to veto similar rezoning petitions. *Id.* at 904. The court in *Schmeling* concluded that, even assuming the seven approved petitions were of a similar nature, the landowner had nevertheless

failed to satisfy his burden to show that the denial of his rezoning petition constituted an arbitrary and unreasonable action. *Id.* at 917.

¶ 47. Here, Willow Creek refers only to a single petition that was approved subsequent to the denial of its own similar petition. Willow Creek offers no further evidence to show that the actions of the Town and the County were arbitrary. Without further evidence, Willow Creek has failed to satisfy its burden of demonstrating that the Town and County acted in an arbitrary and unconstitutional manner.

¶ 48. In sum, we conclude that although Wis. Stat. § 893.80(4) affords immunity to the Town and County for actions involving both money damages and injunctive relief based in tort, there is no immunity under § 893.80(4) for declaratory actions. However, because the actions of the Town and the County were neither illegal nor unconstitutional, declaratory relief is unavailable in this case.

### Equitable Estoppel

¶ 49. Finally, Willow Creek contends that the Town and County should be equitably estopped from asserting immunity as a defense and from preventing the operation of Willow Creek's game bird farm due to the negligent misrepresentations of Town Chairperson, Jeff Brudos. Although municipalities are not wholly immune from the doctrine of equitable estoppel,[13] it is well established that erroneous acts or representations of municipal officers do not afford a

---

[13] *City of Milwaukee v. Milwaukee County*, 27 Wis. 2d 53, 66, 133 N.W.2d 393 (1965).

basis to estop a municipality from enforcing zoning ordinances enacted pursuant to the police power. *Town of Richmond v. Murdock*, 70 Wis. 2d 642, 654, 235 N.W.2d 497 (1975); *City of Milwaukee v. Leavitt*, 31 Wis. 2d 72, 76–77, 142 N.W.2d 169 (1966). *See also Snyder v. Waukesha County Zoning Bd.*, 74 Wis. 2d 468, 476–77, 247 N.W.2d 98 (1976); *State ex rel. Westbrook v. City of New Berlin*, 120 Wis. 2d 256, 262, 354 N.W.2d 206 (Ct. App. 1984).[14]

¶ 50. Binding municipalities to every representation made by subordinate employees would produce severe results for the municipalities. Endless litigation would ensue over the words of those employees, and important municipal decisions would be delayed pending resolution of those suits. Consistent with the above-cited, well-established law, we determine that the misrepresentations of Jeff Brudos may not serve as a basis for estopping the Town and County from enforcing the County zoning ordinance and vetoing Willow Creek's rezoning petition.

---

[14] The dissent's extensive recitation of the facts to depict the perceived injustice to Willow Creek ignores that the law of estoppel in the zoning context is well-defined. Notwithstanding the unjust results of those acts, the erroneous acts of officers do not serve as a basis for estopping a municipality from enforcing an ordinance enacted pursuant to its police power.

Furthermore, although the dissent sets forth the actions of the County to demonstrate why it is a named defendant, we note once again that the County voted in favor of rezoning the game bird farm to allow Willow Creek to legally operate its commercial enterprise. The County's citation subsequent to the Town's veto of the rezoning petition is consistent with the representations made by the County that it did not foresee a problem with rezoning if the Town acquiesced. *See* Dissent at ¶ 105.

435

¶ 51. Similarly, we conclude that the Town and County are not estopped from asserting immunity as a defense. The cases Willow Creek offers in support of its argument do not involve the application of the doctrine of equitable estoppel to the enforcement of zoning ordinances enacted pursuant to a municipality's police power. *See Anderson v. City of Milwaukee*, 208 Wis. 2d 18, 34, 559 N.W.2d 563 (1997) (waiver of discretionary immunity defense by omission); *Fritsch v. St. Croix Cent. Sch. Dist.*, 183 Wis. 2d 336, 344, 515 N.W.2d 328 (Ct. App. 1994)(estoppel of notice of claim defense).

¶ 52. Willow Creek refers to *Russell Dairy Stores v. Chippewa Falls*, 272 Wis. 138, 74 N.W.2d 759 (1956), to buttress its position that equitable estoppel may lie against a municipality so as to prevent the enforcement of its zoning ordinance. However, *Russell Dairy Stores* is distinguishable from the facts of the present case.

¶ 53. In *Russell Dairy Stores*, the entire city council of Chippewa Falls had already granted the plaintiff a permit to construct a driveway. In reliance on the city's permit, the plaintiff then invested a significant amount of money in the construction of the driveway. A few months later, the city council voted to revoke the plaintiff's permit. This court, determining that the issuance of the permit did not violate any law or the city's contract with the state, applied the doctrine of equitable estoppel to prevent the city of Chippewa Falls from revoking a permit it had already granted to the owner of the driveway. The court noted that the plaintiff had gained a vested right in the permit issued by the city, which could not then be arbitrarily revoked. *Russell Dairy Stores*, 272 Wis. at 145–46.

¶ 54. There are several and significant differences between *Russell Dairy Stores* and the present case. First, *Russell Dairy Stores* was decided prior to the formulation of the present immunity statute, Wis. Stat. § 893.80(4). The concept of immunity as a defense was not implicated in the case.

¶ 55. Second, the basis for estoppel in *Russell Dairy Stores* involved the erroneous acts of the municipality, not its subordinate officers. In Willow Creek's case, neither the Town nor the County had approved Willow Creek's petition to rezone before Willow Creek invested money to prepare for the operation of a game bird farm. Willow Creek had not acquired a vested right in the operation of its farm on Agricultural B property.

¶ 56. Rather, Willow Creek was informally advised by the Town Chairperson that it would not need to seek rezoning. Although equitable estoppel may be invoked against municipalities in certain cases, the erroneous acts of subordinate officers, rather than those of the municipality, may not serve as the basis for estoppel against a municipality in the enforcement of a zoning ordinance. *Leavitt*, 31 Wis. 2d at 76–77.

¶ 57. Finally, the issuance of the permit in *Russell Dairy Stores* did not violate any law or the city's contract with the state. The court determined that in revoking a legal permit, the city of Chippewa Falls had acted arbitrarily. *Russell Dairy Stores*, 272 Wis. at 147–48. In Willow Creek's case, however, there is an asserted violation of the County zoning ordinance. Moreover, as we have already determined, the decision to prevent the operation of Willow Creek's game bird farm due to a violation of Agricultural A uses was not arbitrary. Thus, the Town and County are not equita-

bly estopped from preventing the operation of Willow Creek's farm.

¶ 58. In summary, we conclude that although the DNR has statutory authority to license the establishment of game farms, its authority does not preclude the Town and the County from regulating the zoning of Willow Creek's game bird farm. We further conclude that the Town and County are immune from suit under Wis. Stat. § 893.80(4), and that their actions in preventing the operation of Willow Creek's game bird farm were neither unconstitutional nor illegal. Finally, we determine that the Town and County are not equitably estopped from asserting immunity as a defense or from enforcing the zoning ordinance and vetoing Willow Creek's petition to rezone its property. Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 59. DAVID T. PROSSER, J. *(dissenting).* Wisconsin law has become unintelligible in explaining what rights and remedies are available to persons who have been injured by state or local government. The purpose of this dissent is to provide an overview of this dilemma and to show how it has led to a serious injustice in the present case.

I

¶ 60. In 1962, this court abrogated the principle of governmental immunity from tort claims. *Holytz v. City of Milwaukee*, 17 Wis. 2d 26, 115 N.W.2d 618 (1962). Our court declared that few tenets of American jurisprudence had been so unanimously berated as the governmental immunity doctrine. 17 Wis. 2d at 33. We

found that governmental-immunity had its origin in judicial decisions and concluded that the time had come to abolish the immunity, even though the legislature had not acted. *Id.* at 37.

¶ 61. The court then addressed the scope of abrogation, announcing that, henceforward, "so far as governmental responsibility for torts is concerned, the rule is liability—the exception is immunity." *Id.* at 39. Further:

> Our decision does not broaden the government's obligation so as to make it responsible for all harms to others; it is only as to those harms which are torts that governmental bodies are to be liable by reason of this decision.
>
> This decision is not to be interpreted as imposing liability on a governmental body in the exercise of its legislative or judicial or quasi-legislative or quasi-judicial functions.

*Id.* at 39–40 (citing *Hargrove v. Cocoa Beach*, 96 So. 2d 130, 133 (Fla. 1957)).

¶ 62. The court acknowledged that the legislature had the last word and was thus free to reinstate immunity, impose damage caps, and establish "administrative requirements. . .preliminary to the commencement of judicial proceedings for an alleged tort." *Id.* at 40.[1]

¶ 63. In 1963, the legislature responded to the *Holytz* decision by enacting Chapter 198, Laws of 1963, effective July 27, 1963. Chapter 198 created Wis. Stat.

---

[1] The court determined that its ruling was prospective, except for Janet Holytz, the injured young child in the suit, and would "not apply to torts occurring before July 15, 1962," about five weeks after the decision. *Holytz v. City of Milwaukee*, 17 Wis. 2d 26, 42, 115 N.W.2d 618 (1962).

§ 331.43, which in time became Wis. Stat. § 895.43 (1975–76) and is now Wis. Stat. § 893.80, the section that applies to this case. The legislature has amended this provision several times.

¶ 64. To understand the current statute, we must look backward. Subsection (1) of the 1963 law directed that: "No action founded on tort, except as provided in s. 345.05, shall be maintained" against a local government entity, including a volunteer fire company, or "officer, official, agent or employe" of such entity, without first filing a timely notice of claim.

¶ 65. Subsection (2) imposed a damage cap of $25,000 "in any action founded on tort" against local governments, and it precluded punitive damages in any such action.

¶ 66. Subsection (3) stated:

> No suit shall be brought against any political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employes nor shall any suit be brought against such fire company, corporation, subdivision or agency or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

The latter half of subsection (3) tracked the language in *Holytz*, explicitly maintaining the immunity in tort for certain discretionary governmental functions.[2]

¶ 67. Subsection (4) provided that "the provisions and limitations of this section shall be exclusive and shall apply to all actions in tort" against the enumerated entities. The subsection also said:

---

[2] *See Coffey v. Milwaukee*, 74 Wis. 2d 526, 532, 247 N.W.2d 132 (1976).

Nothing in this section shall bar an action or impose limitations in any action against any such officer, official, agent or employe individually for intentional torts. When rights or remedies are provided by any other statute against any political corporation, governmental subdivision or agency or any officer, official, agent or employe thereof for injury, damage or death, such statute shall apply and the limitations in sub. (2) shall be inapplicable.

¶ 68.　In 1978, the legislature repealed and recreated Wis. Stat. § 895.43 as part of a larger bill "relating to a uniform procedure for claims brought against local governments." Chapter 285, Laws of 1977. The legislature changed the title of the section from "Tort actions against political corporations, governmental subdivisions or agencies and officers, agents or employes; notice of claim; limitation of damages and suits" to "Claims against political corporations, governmental subdivisions or agencies and officers, agents or employes; notice of injury; limitation of damages and suits." It dropped the phrase "action founded on tort" from subsection (1) and inserted instead the phrase "a claim or cause of action." It renumbered subsection (3) to subsection (4). It also renumbered subsection (4) to subsection (5) and changed the language in the subsection from "the provisions and limitations of this section shall be exclusive and shall apply to all actions in tort" to "the provisions and limitations of this section shall be exclusive and shall apply to all claims." It also dropped from renumbered subsection (5) the sentence: "Nothing in this section shall bar an action or impose limitations in any action against any such officer, official, agent or employe individually for intentional torts."

¶ 69. The Prefatory Note to the revised section explained that the Wisconsin Statutes "contain a variety of procedural steps to follow when bringing a claim" against a local government. The Note then stated:

This bill consolidates these procedures [SECTIONS 1 to 10 and 12] and makes them uniform by repealing and recreating s. 895.43, Wis. stats., [SECTION 11] to include the following procedures when prosecuting a claim against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof or against any officer, official, agent or employe of such corporation, subdivision or agency or volunteer fire company for acts done in their official capacity or in the course of their agency or employment:

a) A 120-day period for filing written notice of injury. However, the failure to give the required notice will not bar an action if the appropriate body had actual notice and failure to provide written notice was not prejudicial to the defendant.

b) No time limit for filing a claim.

c) A time limit of 120 days for disallowing a claim; the failure of an appropriate body to act on a claim within 120 days is treated as a disallowance.

d) Notice of disallowance of a claim which shall include a statement of the date of disallowance and the time during which a claimant may commence a court action.

e) A requirement that suits be commenced within 6 months of the date of service of notice of disallowance.

Ch. 285, Laws of 1977, p. 1233.

¶ 70. The Prefatory Note to the 1978 legislation described *procedures*. It did not explain or even mention the elimination of several references to tort. The new legislation tied eight then-existing statutes, namely, Wis. Stat. §§ 59.76, 59.77(1), 60.36, 62.25(1), 81.15, 118.26, 119.68, and 345.05(3) (1975–76), to the procedures in Wis. Stat. § 895.43. These eight statutes authorized causes of actions or claims against counties, towns, cities, school districts, and against the state for motor vehicle accidents. The objective of all this was to establish uniform procedures to be followed for claims against local governments.[3]

¶ 71. In 1979, the legislature renumbered Wis. Stat. § 895.43 as § 893.80. Section 893.80 has been amended several other times, but the language in subsection (4) exempting local governments and local officials from suits "for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions" has always remained intact.

¶ 72. This information serves as background for the review of two cases that have had a decisive influence on the present litigation. The first case is *DNR v. City of Waukesha*, 184 Wis. 2d 178, 515 N.W.2d 888 (1994), which posed this question: "Does sec. 893.80(1), Stats., the notice of claim statute, apply in all actions or only in tort actions?" *Id.* at 182. The court concluded that § 893.80(1) applies in all actions. *Id.* at 183. It pointed to the "plain language" of the statute. *Id.* at 190. It also quoted from *Figgs v. City of Milwaukee*, 121

---

[3] Disparity among the old statutes and the "confusion" it created is discussed in *Schwartz v. Milwaukee*, 43 Wis. 2d 119, 123, 168 N.W.2d 107 (1969), and *Harte v. Eagle River*, 45 Wis. 2d 513, 518–19, 173 N.W.2d 683 (1970). In *Schwartz*, this court invited the legislature to change the law.

Wis. 2d 44, 52, 357 N.W.2d 548 (1984), in which this court said:

> [I]t is apparent that sec. 893.80(1)(b), Stats., requires a list, item by item, of the kinds of relief sought. One kind of relief sought might be, as here, money damages. In another case, it might be a demand for relief by specific performance or by injunction. *It should be noted that sec. 893.80 is not a statute only applicable to tort claims or claims for negligence.* The opening sentence of sec. 893.80 recites its applicability to any cause of action. Sec. 893.80, when initially enacted by the legislature, applied only to tort claims, but by ch. 285, Laws of 1977, the procedures were made generally applicable to any claims against the listed governments. Accordingly, the statute provides for a method of securing relief against a city that may be different from, or in addition to, damages (emphasis added).

¶ 73. In the *Waukesha* case, the court discussed three court of appeals decisions after 1978 that had ruled that Wis. Stat. § 893.80(1) applied only to actions for money damages: *Kaiser v. City of Mauston*, 99 Wis. 2d 345, 356, 299 N.W.2d 259 (Ct. App. 1980); *Harkness v. Palmyra-Eagle Sch. Dist.*, 157 Wis. 2d 567, 579, 460 N.W.2d 769 (Ct. App. 1990); and *Nicolet v. Village of Fox Point*, 177 Wis. 2d 80, 86, 501 N.W.2d 842 (Ct. App. 1993). 184 Wis. 2d at 191. The *Waukesha* court then said:

> [W]e now hold that sec. 893.80 applies to all causes of action, not just those in tort and not just those for money damages. We therefore overrule *Kaiser*, *Harkness* and *Nicolet* to the extent that those opinions hold that sec. 893.80(1) applies only to tort claims and claims for money damages.

*Id.*[4]

¶ 74. In *Waukesha,* the Department of Natural Resources (DNR) had sought an injunction against the City of Waukesha as well as forfeitures under one statute and penalties under another. Ultimately, the court reversed the decision of the circuit court to dismiss the DNR complaint.[5] As a result, this court permitted the DNR to seek injunctive relief against the City.

¶ 75. The second case is *Johnson v. City of Edgerton,* 207 Wis. 2d 343, 558 N.W.2d 653 (Ct. App. 1996), decided two years after *Waukesha.* In *Johnson,* the court focused on a different subsection of Wis. Stat. § 893.80. The principal issue was "whether the immunity granted by § 893.80(4), STATS., is limited to actions in tort, or whether it extends to equitable actions seeking injunctive relief." *Id.* at 345. The court concluded that "the official immunity provisions of § 893.80(4), STATS., like the notice and claim provisions of § 893.80(1), are not limited to tort or money-damage actions, but are equally applicable to actions which. . .seek injunctive relief against the governmental subdivision or employee." *Id.* at 352. In reaching

---

[4] In footnote 10 of its decision, the court wrestled briefly with the problem of preliminary relief, saying: "Such immediate relief is not possible if the claimant is required to follow the notice procedures. . . .[T]his issue—whether the notice requirements of sec. 893.80(1) apply in cases where the plaintiff seeks preliminary relief—is not before the court and we need not address it." 184 Wis. 2d at 193.

[5] In *Johnson v. City of Edgerton,* 207 Wis. 2d 343, 349, 558 N.W.2d 653 (Ct. App. 1996), the court of appeals mistakenly stated: "The [supreme court] upheld the trial court's dismissal of the action, holding that 'the notice of claim statute. . .applied in all actions, not just in tort actions.' "

this conclusion, the court relied heavily on the language and analysis of the *Waukesha* case.

¶ 76. The majority opinion today consecrates the *Johnson* decision as controlling Wisconsin law, declaring that:

> Not only does immunity under Wis. Stat. § 893.80(4) bar Willow Creek's suit against the Town and County for money damages, it also precludes suit in this instance for injunctive relief. *Johnson v. City of Edgerton*, 207 Wis. 2d 343, 352, 558 N.W.2d 653 (Ct. App. 1996). In *Johnson*,. . .[t]he court held that the official immunity provisions of Wis. Stat. § 893.80(4) are not limited to money damages or tort actions, but apply as well to actions seeking injunctive relief against municipalities and their employees.

Majority op. at ¶ 31.

¶ 77. In my view, some of the language used in *Figgs* and *Waukesha* was overly broad. Some of the analysis in *Waukesha* was too sweeping. When the court of appeals followed that analysis in lock step for its decision in *Johnson*, it marched directly into a bed of quicksand. Close scrutiny of the statute and of the *Waukesha* opinion demonstrate why *Johnson* was incorrectly decided.

## II

¶ 78. The legislation passed in 1963 was a direct response to the *Holytz* decision. It was intended to deal with tort claims against local governments, create a procedure for handling these tort claims, solidify the tort immunity that the court had recognized for certain discretionary governmental acts, prohibit suits against local governments for intentional torts of employees,

preclude punitive damages against local governments in tort actions, and establish damage caps in government tort cases.

¶ 79. Subsection (3) of Wis. Stat. § 331.43 (1963–64) read:

> No suit shall be brought against any political corporation, governmental subdivision or agency thereof for the intentional torts of its officers, officials, agents or employes nor shall any suit be brought against such fire company, corporation, subdivision or agency or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

¶ 80. In subsection (3), the phrase "nor shall any suit be brought" refers to any suit in tort. It is inconceivable that the legislature intentionally precluded a vast array of suits *not* founded in tort in this tort claims statute, did so in the middle of a sentence, and did so without ever revealing that that was its intention. Certainly, the subsection was not interpreted to extend beyond tort suits until the *Johnson* case in 1996.[6]

---

[6] For instance, in *Energy Complexes v. Eau Claire County*, 152 Wis. 2d 453, 465, 449 N.W.2d 35 (1989), this court considered a defense by Eau Claire County that Wis. Stat. § 893.80(4) immunized a county from a breach of contract lawsuit. This court said:

Section 893.80(4), Stats., does not apply to suits involving a local government body's contractual obligations. The County concedes that when § 893.80(4) was originally enacted, it only applied to tort actions. The County argues, however, that § 893.80(4) was made applicable to all actions, including contract actions, by amendments in Chapter 285, Laws of 1977. The County's argument must fail in light of the legislative history behind the 1977 amendments. The prefatory note to Chapter 285, Laws of 1977, shows that the intent of the legislature was merely to consolidate and make uni-

¶ 81. Renumbered subsection (4) of Wis. Stat. § 893.80 now reads:

> No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employes nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

The legislature made no substantive changes in present subsection (4) over a 35-year period. No critical language was added, and no critical language was deleted. It is improbable that the legislature, in passing a bill prepared by the highly regarded Legislative Council, intended in subsection (4) to wipe out remedies long available to litigants without changing statutory language and without alerting anyone of its objective.

¶ 82. The history of subsection (1) of Wis. Stat. § 893.80 is quite different. In 1978, the legislature repealed and recreated Wis. Stat. § 895.43(1), dropping the phrase "action founded in tort." Whether the legislature actually intended its new phrase "a claim or cause of action" to apply to all claims beyond tort claims is debatable. Nevertheless, the legislature deleted critical language from the subsection, and the resulting provision appears on its face to be much

form the statutory procedures for commencing claims against local government entities.

broader in scope than it was before.[7] In addition, there is a clear rationale for requiring that a notice of claim be filed before suit is commenced against a local government: A notice gives the local government an opportunity to investigate the claim and resolve the dispute before becoming enmeshed in costly litigation. The 1978 legislation had the announced purpose of making uniform the notice procedures affecting local governments. Hence, there was good reason for the *Waukesha* court to interpret Wis. Stat. § 893.80(1) as applying to more than tort claims, reserving the issue of preliminary relief.

¶ 83. Thereafter, however, the *Johnson* court substantially extended the *Waukesha* decision. The Johnsons had argued that the *Waukesha* case was "precedentially binding only as to Subsection (1)." 207 Wis. 2d at 349. The court replied that, "Given the [*Waukesha*] court's analysis. . .we question whether the decision may be so limited." *Id.* The court of appeals then gave three reasons why the analysis in *Waukesha* led it to interpret subsection (4) of Wis. Stat. § 893.80 the same as subsection (1).

¶ 84. First, the court said, "the supreme court found significant, if not controlling, the absence of a specific limitation to tort claims in Wis. Stat.

---

[7] In *City of Racine v. Waste Facility Siting Bd.*, 216 Wis. 2d 616, 624, 575 N.W.2d 712 (1998), the majority went to the drafting files and found additional materials to support the court's conclusion that Wis. Stat. § 893.80(1) applied to all causes of action. The court said: "It is clear from the plain language, especially as bolstered by the legislative history, that the legislature intended that § 893.80(1)(b) apply to 'all causes of action, not just those in tort and not just those for money damages' " (citing *DNR v. City of Waukesha*, 184 Wis. 2d 178, 191, 515 N.W.2d 888 (1994)).

§ 893.80(1)." *Id.* at 350–51. Thus the court of appeals declared:

> The same may be said for the "immunity" provisions of subsection (4); they do not now contain—nor have they ever contained—any such limitation. The subsection states, simply and plainly, that acts done in the exercise of the subdivision's discretionary functions are immune from "any suit."

*Id.* at 351.

¶ 85. The absence of language in Wis. Stat. § 893.80(4) explicitly limiting the suits to which the subsection applies is discussed above in ¶ 80. The context and history of the subsection suggest that the phrase "nor shall any suit be brought" is implicitly limited to suits in tort.

¶ 86. What the court of appeals failed to recognize in *Johnson* is that when it jettisoned the implicit limitation in subsection (4) to suits *in tort*, it also jettisoned the limitation to immunity *for tort*. Read literally, the subsection creates immunity for *any* acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions. This arguably precludes claims in contract.[8]

¶ 87. If a literal reading of the subsection were correct, how could a person challenge in court a decision made by a local school board to name a public school after Richard Speck or Jeffrey Dahmer? Isn't the naming of a public school a legislative function? How could a person challenge in court a decision by the school board to non-renew all teachers who were left handed or had red hair? Isn't non-renewal a discretion-

---

[8] As noted in footnote 6, this court unanimously rejected breach of contract immunity in *Energy Complexes v. Eau Claire County*, 152 Wis. 2d 453, 449 N.W.2d 35 (1989).

ary decision? How could a person challenge the legality of an ordinance passed by a city council, a questionable expenditure by a county board, or the arbitrary refusal of a local government body to grant a permit? Passing ordinances, spending public money, and granting or denying permits represent classic legislative or judicial functions. How could a person go to court to stop a continuing injury from the negligence or even intentional misconduct of a local government? One cannot read "No. . .suit may be brought" literally without stripping citizens of fundamental protections and inviting misconduct by local governments. One cannot read the language literally without producing absurd results never intended by the legislature in the 1978 law.

¶ 88. The *Johnson* court gave a second reason for interpreting subsection (4) as broadly as subsection (1). The court argued that "the immunity from *any* suit language of § 893.80(4), STATS., significant in itself, becomes even more so when considered in context." 207 Wis. 2d at 351. The court contrasted the reference to intentional torts with the subsequent prohibition of "any suit" in the same sentence:

> Not only is there, as we have just noted, no limiting language here, but in the preceding clause of the same subsection, the legislature made a specific reference to actions for intentional torts. . . .When the legislature uses different terms in a statute—particularly in the same section—we presume it intended the terms to have distinct meanings. We do not believe it would be reasonable to read a "torts-only" limitation into the "any suit" language of § 893.80(4).

*Id.*

¶ 89. There are several responses to this argument. At the time the subsection was enacted in 1963, a faithful construction of the subsection would have recognized a "torts-only" limitation to the "any suit" language because the language was part of a tort claims statute. The language was construed that way for more than 30 years. To construe the language differently in 1996 required the court to read the "torts-only" limitation *out* of the subsection, in effect overruling countless court decisions. This was contrary to the principle set forth in *Cook v. Cook*, 208 Wis. 2d 166, 185–190, 560 N.W.2d 246 (1997), that the court of appeals may not overrule, modify or withdraw language from a previously published decision of the court of appeals. *Johnson* would have had to be decided differently if it had followed rather than preceded the *Cook* decision.

¶ 90. The three court of appeals decisions partially overruled in *Waukesha* serve to illustrate the point. In *Kaiser v. City of Mauston*, 99 Wis. 2d 345, 299 N.W.2d 259 (Ct. App. 1980), the court of appeals affirmed a permanent injunction against the City of Mauston and its Lake Improvement District. The defendants were enjoined from giving effect to a lake rehabilitation plan created in part by the city council. The defendants contended that the suit was barred by a failure to comply with the notice provision of Wis. Stat. § 62.25(1), which was tied to then Wis. Stat. § 895.43(1). The court of appeals disagreed, and it upheld the injunction. Although this court overruled *Kaiser* on the notice of claim issue in *Waukesha*, it did not say that a circuit court could not issue an injunction against a city. The *Johnson* decision implies that the remedy employed in *Kaiser* has been eliminated.

¶ 91. In *Harkness v. Palmyra-Eagle Sch. Dist.*, 157 Wis. 2d 567, 460 N.W.2d 769 (Ct. App. 1990), a probationary teacher was not renewed by the school board. She sued for reinstatement and money damages, claiming that the school board had violated certain procedures established by statute. The court rejected her claim for money damages on grounds that the school district had immunity for discretionary acts, but the court ruled that Wis. Stat. § 893.80 did not bar her claim for reinstatement—non-monetary injunctive relief in the form of an order to reinstate her to her former teaching position. The court of appeals stated: "We conclude. . .that sec. 893.80(4), Stats., does not bar Harkness's claim for reinstatement." 157 Wis. 2d at 580. This court never overruled that portion of the *Harkness* decision in *Waukesha*, but the *Johnson* decision appears to eliminate the remedy of a suit for reinstatement.

¶ 92. *Nicolet v. Village of Fox Point*, 177 Wis. 2d 80, 501 N.W.2d 842 (Ct. App. 1993), was an action for declaratory judgment seeking confirmation that the plaintiffs owned certain land, and for injunctive relief. The suit was dismissed by the circuit court on grounds that the plaintiffs had failed to comply with the notice of claims statute. The court of appeals reversed, maintaining that some of the supreme court's pronouncements in *Waukesha* were dicta. The court said that "any holding to the contrary would render meaningless most attempts to gain timely, effective injunctive relief against governmental units." 177 Wis. 2d at 89–90. The ruling permitted the lawsuit to go forward. Although the Waukesha case overruled the *Nicolet* holding on notice of claim, the *Waukesha* court never precluded injunctive relief against a municipality. Rather, the *Waukesha* case itself gave a green light

to injunctive relief against a municipality. Thus, when the *Johnson* case held that injunctive relief may not be sought against a municipality, it effectively overruled both *Nicolet* and *Waukesha*.

¶ 93. The argument might be made that the court of appeals intended to prohibit injunctive relief against local government *torts* but not against other local government action. But that would require a court to read into the statute a "torts-only" limitation on acts while reading out of the statute a "torts-only" limitation on suits.[9]

¶ 94. The fallout from *Johnson* appeared almost immediately in *Schmeling v. Phelps*, 212 Wis. 2d 898, 569 N.W.2d 784 (Ct. App. 1997). One of the questions in *Schmeling* was whether Wis. Stat. § 893.80(4) barred a declaratory judgment action against a county executive on an allegedly illegal veto. The court concluded that "a declaratory judgment action is not a 'suit. . .brought against' [Richard] Phelps or Dane County within the meaning of § 893.80(4), STATS. [The] action seeks neither money nor injunctive relief from Phelps or the county; they are named as parties only so that they can be heard on the question presented." 212 Wis. 2d at 914–15.

¶ 95. The *Schmeling* court's conclusion that a declaratory judgment action is not barred by subsec-

---

[9] The majority attempts to limit the holding in *Johnson*, asserting in ¶ 33 that "suits must be based in tort to garner the protection of immunity consistent with the statute." This was not the intent of the *Johnson* decision, as the concurring opinion by Judge Vergeront in *Willow Creek* testifies. *Willow Creek Ranch, L.L.C. v. Town of Shelby*, 224 Wis. 2d 269, 286–87, 592 N.W.2d 15 (Ct. App. 1998). See ¶ 118, n.21 below. The majority's interpretation will transform suits against local governments into disputes about whether the suit is "based in tort."

tion (4) was correct; but the court was forced to dance around the *Johnson* court's interpretation of Wis. Stat. § 893.80(4) in a valiant effort to preserve declaratory judgment actions against local government. The court left open the question of what would have happened if a plaintiff had requested an injunction to block enforcement of an ordinance that a court had declared unlawful, or if a taxpayer had tried to stop a public expenditure that a court had ruled illegal. In *Schmeling*, the court was forced to identify specific statutes authorizing suit. It said these specific statutes took precedence over Wis. Stat. § 893.80(4). Suppose there had been no specific government-focused statutes authorizing suit—only general statutes describing procedural remedies? Would that mean that those remedies would not be available in a suit against a local government?

¶ 96. As it examined context, the *Johnson* court neglected to take account of the following language in *Figgs*:

> [I]t is apparent that sec. 893.80(1)(b), Stats., requires a list, item by item, of the kinds of relief sought. One kind of relief sought might be, as here, money damages. *In another case it might be a demand for relief by specific performance or by injunction. . . . [T]he statute provides for a method of securing relief against a city that may be different from or in addition to, damages* (emphasis added).

121 Wis. 2d at 52. Wouldn't it be pointless to require a party to file a notice that it intended to seek injunctive relief if it were never entitled to seek injunctive relief?

¶ 97. Two years before *Johnson*, the court of appeals relied on the *Figgs* case as authority to estop a school district from asserting a defense. *Fritsch v. St.*

*Croix Cent. Sch. Dist.*, 183 Wis. 2d 336, 343, 515 N.W.2d 328 (Ct. App. 1994). The court said:

> The purpose of § 893.80, STATS., is to afford the government an opportunity to compromise and settle the claim without litigation. *Figgs v. Milwaukee*, 121 Wis. 2d 44, 53, 357 N.W.2d 548, 553 (1984). There is nothing in 893.80 to suggest that the legislature intended any different or additional purpose for this statute. *Figgs*, 121 Wis. 2d at 53–54, 357 N.W.2d at 553.

The *Johnson* court reached a mistaken conclusion, in part, because it disregarded many years of precedent from its own court.

¶ 98. The *Johnson* court offered a third argument for its literal interpretation of Wis. Stat. § 893.80(4), namely that immunity provisions derive from public policy considerations. 207 Wis. 2d at 352. It listed these considerations as follows: Public officers should not be unduly hampered or intimidated in the discharge of their functions by threat of lawsuit or personal liability.[10] Courts should not pass judgment on the policy decisions of coordinate branches of government.[11] The valuable time of public officials should not be drained by lawsuits.[12] The sum total of these policy considerations comes close to the proposition that we should eliminate all court remedies against local gov-

[10] *Scarpaci v. Milwaukee County*, 96 Wis. 2d 663, 682, 292 N.W.2d 816 (1980).

[11] *Hillman v. Columbia County*, 104 Wis. 2d 376, 397, 474 N.W.2d 913 (Ct. App. 1991).

[12] *Lister v. Board of Regents*, 72 Wis. 2d 282, 299, 240 N.W.2d 610 (1976).

ernments because it is just too burdensome to hold governments accountable to the people.[13]

¶ 99. In some ways, the *Johnson* case puts ordinary citizens in a worse position than they were before *Holytz*. There is no evidence the Wisconsin legislature intended that result. The *Johnson* case was wrongly decided and under no circumstances should it be sanctified by this court as controlling law. It should be overruled.

## III

¶ 100. This brings us to the facts of this case. They are restated here to report events and details that have been omitted from the majority opinion and to show why the County is a named defendant.

¶ 101. On May 16, 1996, Willow Creek Ranch filed a complaint against the Town of Shelby and La Crosse County.[14] In Claim I of the complaint, Willow Creek sought a declaratory judgment, alleging that the Town of Shelby and La Crosse County had represented to Willow Creek that Willow Creek had the proper zoning for the operation of a game bird farm and that Willow Creek "relied on the Defendants' representation to its detriment." In Claim II, Willow Creek asked for an injunction to enjoin the Defendants from interfering in the operation of the game bird farm and from prosecuting Willow Creek for the operation of the farm.

---

[13] The majority argues in ¶ 33 that the "any suit" language in Wis. Stat. § 893.80(4) applies to suits for money damages in tort and "injunctive relief based in tort." It repeats the policy rationales underlying tort immunity. The majority's analysis implies that these same policy rationales do not apply in suits against local governments when the suits are based on some theory other than tort.

[14] This dissent does not discuss Willow Creek's second suit.

Early in the litigation, Willow Creek moved unsuccessfully for a temporary restraining order and then a temporary injunction.

¶ 102. The County and Town each answered the complaint, and both moved to dismiss. Willow Creek filed supporting affidavits and exhibits, and the County and Town also filed affidavits and exhibits. The filing of the supporting documents converted the motion to dismiss into a motion for summary judgment.[15] In any event, La Crosse County explicitly moved for summary judgment on September 9, 1996, and the Town followed with its own motion on October 25, 1996. The Circuit Court of La Crosse County, Dennis G. Montabon, Judge, granted the motions for summary judgment and motions to dismiss on April 16, 1997.

¶ 103. Wisconsin Stat. § 802.08(2), provides that summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits. . .show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is a drastic rem-

---

[15] Wisconsin Stat. § 802.06(2)(b) provides in part:

If on a motion asserting the defense described in par. (a)6. to dismiss for failure of the pleading to state a claim upon which relief can be granted. . .matters outside of the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in s. 802.08, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by s. 802.08.

*See Johnson v. Johnson*, 179 Wis. 2d 574, 580, 508 N.W.2d 19 (Ct. App. 1993); *Fritsch v. St. Croix Cent. Sch. Dist.*, 183 Wis. 2d 336, 342, 515 N.W.2d 328 (Ct. App. 1994).

edy.[16] It deprives the losing party of the opportunity for a trial or even an evidentiary hearing. Consequently, a motion for summary judgment initiates a search of the existing record,[17] including the pleadings, to determine whether a claim has been stated. In ruling on a summary judgment motion, the court may consider all allegations contained in the pleadings plus the affidavits and other materials filed, in search of a claim.

¶ 104. Willow Creek made the following allegations in its pleadings and other materials. On a motion for summary judgment, in the absence of extraordinary circumstances, the court must accept all these allegations as true.

¶ 105. In October 1993, Willow Creek's vice president, Kevin Churchill, telephoned the La Crosse County Zoning and Land Information Office and asked whether Willow Creek could operate a game bird farm, with hunting activities, on its 115-acre property in the Town of Shelby. An official at the La Crosse County Zoning Office told Churchill that La Crosse County would not object to a game bird operation and advised him to contact Jeffrey L. Brudos, chairman of the Town of Shelby, to see if the Town had any objections. The official said that if the Town had no objections, Willow Creek could operate a game bird farm. Churchill and Mary McLoone, president of Willow Creek, then telephoned Brudos and asked him whether a zoning change was required to operate a game bird farm, including hunting. Brudos told McLoone and Churchill that no zoning change was required.

---

[16] *Lecus v. American Mut. Ins. Co. of Boston*, 81 Wis. 2d 183, 189, 260 N.W.2d 241 (1977).

[17] *Peoples Trust & Sav. Bank v. Standard Printing Co.*, 19 Wis. 2d 27, 31, 119 N.W.2d 378 (1963)

¶ 106. Relying on these assurances, Willow Creek began work to obtain a license for a game bird farm from the DNR and to develop its property for the farm. Over the next 11 months, Willow Creek made building improvements, constructed pens, repaired wells, did electrical work, purchased birds, purchased and trained dogs, transferred land, conducted a survey, and paid accounting and legal fees to prepare for a September 1994 opening. It also obtained the DNR license.[18] Willow Creek expended more than $340,000 on payroll and operating expenses and on capital investments before it opened the game bird farm.

¶ 107. On September 30, 1994, McLoone and Churchill met at the farm with Harlan Ruskell, retiring assessor for the Town of Shelby, and Drew Heiden, Ruskell's successor. Ruskell and Heiden evaluated the improvements to the property for tax purposes. After looking at the property, Heiden upgraded the classification of the land and "hiked the land value."[19] A few days later, Willow Creek hosted an open house to show neighbors the new game bird farm.

¶ 108. The Willow Creek officers were optimistic about their initial success. In December 1994, Mary McLoone and Susan McLoone, another Willow Creek employee, contacted La Crosse County official Mike Weibel to discuss the possibility of building an office to

---

[18] Paragraph 4 and n.4 of the majority opinion attempt to discredit Willow Creek by implying that Willow Creek was late in obtaining a DNR license to operate a game bird farm. In my view, the record does not support an inference that Willow Creek was careless or delinquent in obtaining a state license.

[19] The record is not clear who initiated the September 30 meeting. A meeting initiated by the town assessor would imply knowledge on the part of the Town of developments at the property.

handle the overflow of customers at Willow Creek Ranch.

¶ 109. Between October 1993 and June 1995, Willow Creek officers had several communications with the County and Town. At no point during this time did local officials inform Willow Creek that it needed a zoning change to operate a game bird farm.

¶ 110. On June 21, 1995, 20 months after the initial contact with the County and Town, a County official, Dan McDonald, called Mary McLoone to suggest that at some point Willow Creek should change its zoning from Exclusive Agricultural to Agricultural B. McDonald told McLoone that the County had been aware of the game bird farm for some time, but the County had not done anything because Willow Creek officials had been in contact with the County Zoning Office. McDonald said McLoone should speak again to Shelby Town Chairman Jeffrey Brudos. When McLoone made the call, Brudos stated that he did not think it was necessary for Willow Creek to change its zoning because it was his impression that Willow Creek's zoning was appropriate for what it was doing. Brudos said he would check into it and get back to McLoone.

¶ 111. Brudos did not get back to McLoone. In July and August, McLoone made seven telephone calls attempting to reach the Town Chairman. On the seventh call, Brudos told her that a zoning change would be necessary. McLoone promptly met with Dan McDonald, who told her that La Crosse County did not have a problem with rezoning the property.

¶ 112. In October 1995, Willow Creek hired a surveyor to secure a legal description of the property and set up a buffer zone between the hunting area and the nearest neighbors. It also invited members of the

Town Board to visit the ranch. No one came. On November 6, 1995, Mary and Susan McLoone attended a Town Board meeting to inquire about rezoning procedure. Chairman Brudos told the McLoones to contact La Crosse County, and he informed them it would not be necessary to attend another Town Board meeting.

¶ 113. In November 1995, Willow Creek petitioned La Crosse County to rezone the property from Exclusive Agricultural to Agricultural B. Members of the La Crosse County Zoning Committee visited the game bird farm. The Zoning Committee then scheduled a meeting for December 4. On that day, Mary McLoone attended a session of the Town Board. Jeffrey Brudos informed her that she did not have to attend the meeting with the County Zoning Committee. The Town Clerk, Ted Ernst, corrected Brudos and advised McLoone that she should attend the meeting. She did, and no objectors appeared when Willow Creek's proposed zoning change was discussed. Four days later, however, La Crosse County, through Mike Weibel, informed McLoone that Willow Creek would have to cease its business until the zoning issue was resolved.

¶ 114. Brudos accused Willow Creek of attempting to pull a fast one by attending the December 4 meeting with the County Zoning Committee after he said it was not necessary. In subsequent meetings, Brudos attempted to mislead Willow Creek and to stifle persons who wished to speak on Willow Creek's behalf.

¶ 115. The months of January, February, and March 1996 saw considerable maneuvering and negotiation among the parties.[20] Eventually, on March 21, the La Crosse County Board voted to grant Willow Creek's petition for rezoning from Exclusive Agricul-

[20] Willow Creek spent additional money for noise studies, safety studies, and experts.

tural to Agricultural B. This zoning change was vetoed by the Town of Shelby. Jeffrey Brudos voted to veto the zoning change, culminating several months of opposition to any zoning modification that would permit the game bird farm to operate.

¶ 116. In its affidavits, Willow Creek asserted that Gary Wickus, a neighbor and opponent of the game bird farm, spoke at a meeting of the La Crosse County Zoning Committee on January 29, 1996, and said that he had been calling La Crosse County since 1993 to complain about the proposed game farm, thereby confirming La Crosse County's longstanding knowledge of the Willow Creek project. Willow Creek also alleged that at a meeting of the La Crosse County Board on February 15, 1996, Jeff Bluske, Director of the La Crosse County Zoning and Land Information Office, admitted that Willow Creek had informed La Crosse County about Willow Creek's intention to open a game farm. Bluske explained that La Crosse County had given its approval because the County's definition of a game farm did not include hunting. Bluske's sworn affidavit does not disavow these representations.

¶ 117. In light of these allegations, the circuit court acknowledged that "there is a disputed fact as to whether officials of the County and Town governments told the plaintiff that it complied with current zoning law." The court denied summary judgment on that issue. Nonetheless, the court dismissed the suit, asserting that: (1) erroneous acts of municipal officers do not afford a basis to estop a municipality from enforcing a zoning ordinance enacted pursuant to the police power; and (2) Wis. Stat. § 893.80 "provides immunity to municipal governments for their 'discretionary' actions relating to all causes of action, including injunctive relief and estoppel claims." As

463

authority for the second proposition, the court cited *Johnson* and *Waukesha. Id.* at 12. The court candidly acknowledged that it was asked to delay its decision until the opinion in *Johnson* was ordered published, so that the case could be cited as precedent. *Id.* at 3.

¶ 118. When the court of appeals affirmed the circuit court, it stated:

> Willow Creek. . .asserts that the Town and County are not immune under § 893.80(4), STATS., from claims for equitable relief. We addressed the scope of § 893.80(4), as it relates to equitable relief in *Johnson v. City of Edgerton.* . . .We concluded that the public policy considerations underlying § 893.80(4) "apply just as earnestly to an equitable action seeking injunctive relief against the agency or the official as they do to one for the recovery of money.". . .[S]imilar to *Johnson,* this is a negligence claim in which the plaintiffs are seeking equitable relief. Therefore, we are satisfied that we can apply the holding in *Johnson* to this case. . . .

> In sum, because we have concluded that governmental immunity shields the Town and County from suits for equitable relief, we need not address the merits of Willow Creek's estoppel argument regarding Budros [sic] alleged misrepresentation.

*Willow Creek*, 224 Wis. 2d at 283–85.[21]

---

[21] In an insightful concurring opinion, Judge Vergeront expressed concern

> over the reach of our decision in *Johnson v. City of Edgerton.* . . .Under *Johnson,* a citizen may not obtain injunctive relief against a municipality or a municipal official even if equitable estoppel would otherwise lie to prevent the municipality from enforcing an ordinance. . . .[T]here are situations in which it may be appropriate to enjoin on equitable grounds a municipality from enforcing an ordinance. *See, e.g., Russell Dairy Stores v. City of*

¶ 119. There can be no doubt that *Johnson* played a pivotal role in the decisions of both the circuit court and the court of appeals. This court has held that a complaint fails to state a claim upon which relief can be granted if the defendant is immune from liability for the activity alleged in the complaint. *C.L. v. Olson*, 143 Wis. 2d 701, 706–07, 422 N.W.2d 614 (1988); *Energy Complexes v. Eau Claire County*, 152 Wis. 2d 453, 463, 449 N.W.2d 35 (1989). The mistaken law in *Johnson* must have influenced judicial thinking.

## IV

¶ 120. The law on governmental immunity has become so muddled that it no longer provides reasonable guidance about when local governments may be sued, what remedies are available to persons claiming injury, and the circumstances in which local governments and their employees may be held liable. At the center of this confusion is *Johnson v. City of Edgerton*. Hence, as the first step to restore coherence to the law, the *Johnson* case should be overruled, and this court should assert unequivocally that Wis. Stat. § 893.80(4) applies only to tort suits for money damages.

¶ 121. Recent interpretations of Wis. Stat. § 893.80(1) illuminate the problems ahead for § 893.80(4). As noted above, § 893.80(1), the notice of claim statute, has been held to apply to all causes of action, not just those in tort and not just those for

---

*Chippewa Falls*, 272 Wis. 2d 138, 148, 74 N.W.2d 759, 765 (1956). . . .The case before us may not be one of those few cases where a municipality should be equitably estopped from enforcing an ordinance, but even if it were, under *Johnson* the municipality would be immune from suit seeking injunctive relief. I question whether the legislature intended such a result.

*Willow Creek*, 224 Wis. 2d at 286–87.

money damages. *Waukesha*, 184 Wis. 2d at 191; *City of Racine v. Waste Facility Siting Bd.*, 216 Wis. 2d 616, 622, 575 N.W.2d 712 (1998). In the *Racine* case, the court held that the notice requirement even applies to the filing of a counterclaim or cross-claim seeking a declaratory judgment. *Id.* at 620. However, in *Auchinleck v. Town of LaGrange*, 200 Wis. 2d 585, 597, 547 N.W.2d 587 (1996), the court held unanimously that actions seeking to enforce Wisconsin's open meetings and open records laws are exempt from § 893.80(1). Moreover, in *Gillen v. City of Neenah*, 219 Wis. 2d 806, 580 N.W.2d 628 (1998), the court sided with plaintiffs who sued three defendants, including the City of Neenah, seeking declaratory and injunctive relief. The court held that the plaintiffs could bring a suit under Wis. Stat. § 30.294 to abate a nuisance, without first filing a notice of claim. The court said:

> We conclude that there is an exception to Wis. Stat. § 893.80(1)(b) where the plaintiffs' claims are brought pursuant to the public trust doctrine under Wis. Stat. § 30.294, which provides injunctive relief as a specific enforcement remedy. It is irrelevant that the requested injunction in this case was not against the City of Neenah.

*Id.* at 826.[22]

¶ 122. In a concurring opinion in *Gillen*, Chief Justice Abrahamson asserted that "the rationale of the. . .opinion. . .directly contradicts the *Waukesha* case." *Id.* at 836. "*Waukesha* made clear that unless preliminary injunctive relief is requested, a notice of

---

[22] The court also pointed to *Felder v. Casey*, 487 U.S. 131 (1988), which held that Wisconsin's notice of claim statute had to yield to the supremacy of actions authorized under 42 U.S.C. § 1983.

claim must be filed with the defendant city. The *Waukesha* court held that Wis. Stat. § 893.80(1)(b) applies to an action against a city for injunctive relief." *Id.* at 838.

¶ 123. The inconsistent interpretation of Wis. Stat. § 893.80(1) is a reliable precursor of what lies ahead for § 893.80(4) because the analysis of subsection (1) in *Waukesha* was applied by the *Johnson* court to subsection (4). Looking forward, this court's literal reading of subsection (1) in *Racine*, making it apply to a counterclaim seeking a declaratory judgment, undermines the validity of *Schmeling* and raises questions about the application of subsection (4) when a party joins a prayer for injunctive relief with an action for declaratory judgment. On the other hand, the *Gillen* case recognizes once again that litigants may seek injunctions against local governments.

¶ 124. This court's ratification of *Johnson* in the present case is likely to open the floodgates of local government defenses. In the future, every remedy that a litigant seeks to utilize in a suit against a local government may be challenged to test the reach of the *Johnson* decision. By contrast, overruling *Johnson* would confine subsection (4) to its original objective and put Willow Creek's claims in a new light.

V

¶ 125. Overruling *Johnson* is only part of the work necessary to clarify the law of governmental immunity. This court should reexamine the circumstances in which local governments and local officials may be liable in tort.

¶ 126. Governmental immunity was abrogated in *Holytz*. It was not restored in the 1963 legislation or in subsequent legislation. Wisconsin Stat. § 893.80(3)

467

proves this point. Subsection (3) limits the amount recoverable "for any damages, injuries or death in any action founded on tort" against local governments or their officers, agents or employes "*for acts done in their official capacity or in the course of their agency or employment*" (emphasis added). The plain implication of subsection (3) is that local governments and local officials may be sued in tort for acts done in their official capacity or in the course of their employment or agency.[23]

¶ 127. Subsection (4) takes away part of what is granted in subsection (3). It provides that local governments may not be sued directly for the *intentional* torts of their officers, officials, agents, or employees, "nor may any suit be brought against [these potential defendants] for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions."

¶ 128. In summary, local governments may be sued for non-intentional torts committed outside "the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions," even if the acts amounting to torts are done in an official capacity.[24] The breach of a ministerial duty resulting in damages is one of the torts for which local governments and local government officials may be sued.

---

[23] Wisconsin Stat. § 893.80(5) recognizes that rights or remedies for injury may also be provided in some other statute.

[24] This formulation, which attempts to follow statutory language, is different from the formulation in *Lister v. Board of Regents*, 72 Wis. 2d 282, 300, 240 N.W.2d 610 (1976), in which the court said: "The general rule is that a public officer is not personally liable to one injured as a result of an act performed within the scope of his official authority and in the line of his official duty."

¶ 129. In tort cases, a line must separate actions taken in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions and are immune from actions taken in an official capacity or in the course of government employment or agency that are not immune. How do we find and identify this line? As early as 1867, this court stated: "It is sometimes difficult to draw the exact line of distinction between ministerial and discretionary or judicial authority. The same officer may act sometimes in one capacity, and sometimes in the other." *Druecker v. Saloman*, 21 Wis. 628, 637 (1867).

¶ 130. The majority opinion outlines four "exceptions" to government immunity under Wis. Stat. § 893.80(4). Majority op. at ¶ 26. The word "exception" is curious with respect to "ministerial duties" because there is an assumption that discretionary actions of the sort immunized in § 893.80(4) and ministerial duties *do not overlap*. Ministerial duties, which are essentially non-discretionary, fall logically on one side of the line; discretionary acts of a legislative or judicial character fall on the other.

¶ 131. In contrast, actions that are "malicious, willful, and intentional" and actions or inactions concerning a "known danger" *may* fall on either side of the line. As a result, these actions may truly be court-created "exceptions" to the immunity recognized in Wis. Stat. § 893.80(4) when they entail discretion.

¶ 132. What is not clear is whether the four "exceptions" that have been created under Wis. Stat. § 893.80(4) to authorize money damages for torts are the only exceptions that will ever be recognized by Wisconsin courts and whether these exceptions should be treated the same when the relief sought does *not* involve money damages.

## MINISTERIAL DUTIES

¶ 133. Assuming that ministerial duties are separate from discretionary functions, nothing in Wis. Stat. § 893.80(4) stands as an obstacle to a suit demanding relief for breach of a ministerial duty unless the breach is intentional. A local government may have defenses against a suit for negligent breach of a ministerial duty, but these defenses are not found in subsection (4). They must be grounded in some other source of law.

¶ 134. In this case, Willow Creek contends that the Town of Shelby and La Crosse County represented to Willow Creek that Willow Creek had the proper zoning for a game bird farm and that Willow Creek relied on these representations to its detriment. The initial question is whether this alleged conduct by local officials breached a ministerial duty.

¶ 135. The frequently cited test for ministerial duty is derived from *Lister v. Board of Regents*, 72 Wis. 2d 282, 300–301, 240 N.W.2d 610 (1976):

> The most generally recognized exception to the rule of immunity is that an officer is liable for damages resulting from his negligent performance of a purely ministerial duty. A public officer's duty is ministerial only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.

¶ 136. The *Lister* language comes from *Meyer v. Carman*, 271 Wis. 329, 332, 73 N.W.2d 514 (1955), in which the court quoted from 18 McQuillin, *Municipal Corporations* (3d ed.), § 53.33:

Official action. . .is ministerial when it is absolute, certain, and imperative, involving merely the execution of a set task, and when the law which imposes it prescribes and defines the time, mode, and occasion for its performance with such certainty that nothing remains for judgment or discretion.

It must be noted that McQuillin's commentary has been updated. The revised third edition drops § 53.33 and comments in new § 53.04.10 that:

Stating the reasons for the discretionary-ministerial distinction is much easier than stating the rule. . . .[T]he difference between "discretionary" and "ministerial" is artificial. An act is said to be discretionary when the officer must exercise some judgment in determining whether and how to perform an act. The problem is that "[i]t would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail." (quoted source omitted)

¶ 137. The court last dealt with ministerial duty in *Kierstyn v. Racine Unified Sch. Dist.*, 228 Wis. 2d 81, 596 N.W.2d 417 (1999). The case involved a "benefits specialist" for the Racine School District who allegedly gave John and Judith Kierstyn incorrect information about state disability benefits for Mrs. Kierstyn, costing Mr. Kierstyn hundreds of dollars per month in survivor benefits. This court upheld the circuit court's summary judgment against the plaintiff on grounds of public officer immunity.

¶ 138. The court noted that the benefits specialist provided general information about employment benefits, including union benefits. "He was not, how-

ever, an agent of the [Wisconsin Retirement System] and could not authoritatively represent to District employees what WRS benefits they were entitled to receive." *Id.* at 85.

¶ 139. Discussing ministerial duty, the court quoted the test from *Lister*, then concluded that the benefits specialist "was under no duty that was 'absolute, certain and imperative' which 'impose[d], prescribe[d] and define[d] the time, mode and occasion for its performance.' " *Id.* at 91. It said that Kierstyn had pointed to no statutory obligation to advise school district employees of their state disability benefits. *Id.*

¶ 140. Kierstyn argued that the disability benefits statute was unambiguous. The court replied:

> We cannot accept Kierstyn's argument that an unambiguous statute creates a ministerial duty. As noted above, a public officer's duty must arise from some obligation created by law. The District was under no legal obligation to hire a benefits specialist. In like fashion, [the benefits specialist] was under no legal obligation to offer advice about WRS benefits to employees of the District.

*Id.* at 92.

¶ 141. Kierstyn also argued that even if the benefits specialist were under no ministerial duty to provide the disability information, his choosing to do so created a ministerial duty to provide correct information. *Id.* at 92–93. The court acknowledged several cases that held that once public officers choose in their discretion to act, they are bound by a ministerial duty to act in a certain manner. The court thereafter distinguished these cases from the *Kierstyn* facts.

¶ 142. The present case is different from *Kierstyn*. Accepting Willow Creek's allegations of fact as

472

true, Willow Creek telephoned the La Crosse County Zoning and Land Information Office to ask specifically whether it could operate a game bird farm in the Town of Shelby. The Zoning Office is the most authoritative source of information about zoning in La Crosse County. There is no higher authority. The office exists to administer the county zoning ordinance on a daily basis. It has a duty to answer questions about and make determinations under the zoning ordinance. It does much more than offer advice. The office gave its approval to Willow Creek to operate a game bird farm.

¶ 143. The zoning ordinance was either ambiguous or unambiguous. If we assume the zoning ordinance was clear and unambiguous and that it did not permit a game bird farm to operate on land zoned Exclusive Agricultural, zoning officials had a ministerial duty to inform Willow Creek that it could not operate a game bird farm on its property without first obtaining a zoning change. Instead, the authoritative interpreters of the ordinance gave their approval for the game bird farm and watched the farm develop and operate, knowing that Willow Creek was relying on their representation of approval. Twenty months later they decided to enforce the ordinance.

¶ 144. If we assume the zoning ordinance was ambiguous, County officials should not have answered Willow Creek's zoning inquiries as they did. They could have asked that Willow Creek put its question in writing. They could have asked for more information or more time. They could have raised doubts and denied approval, or raised doubts and suggested a zoning change. Instead, they gave approval. When these County officials later learned of opposition to the farm, as confirmed by Gary Wickus, they could have taken a second look at the zoning issue and warned Willow

Creek of a potential problem. Instead, they did nothing. For months and months, they did not take any steps to address the issue. Twenty months after being consulted, nine months after the game bird farm had opened, and six months after Willow Creek had come to the County again to discuss building an office, the zoning officials suggested that Willow Creek seek a zoning change. Although County zoning officials at first offered encouragement, they ultimately opposed the change.

¶ 145. One might argue that La Crosse County zoning officials had the discretion in 1993 to interpret the ordinance any way they wanted. Once they made their decision, however, the officials were not free to reverse their position and attempt to enforce an ordinance they had earlier informed Willow Creek was not a problem, particularly after waiting so long. The real world cannot function if citizens are not able to rely on the individualized decisions of authoritative government officials. If authoritative government officials are free to make decisions upon which individuals are expected to rely and then are permitted to disregard those individualized decisions, at any time, without consequence to themselves or their governments, there will be no confidence in our governmental institutions and no stability in our economy or the law.

¶ 146. Jeffrey Brudos was the elected chairman of the Town of Shelby. He was the person to whom the County referred Willow Creek for reaction. Told of Willow Creek's plans, Brudos presented no objections and said a zoning change was not necessary. Many months later he repeated that view. Subsequently, Brudos altered his position and worked to prevent any zoning change, including the adoption of reasonable conditions that would allow Willow Creek to operate.

¶ 147. Town of Shelby officials reassessed the Willow Creek property so that additional taxes could be collected, based upon improvements implicitly approved by Shelby's town chairman. The record does not reveal any building permits, but given the extent of construction, well repair, and electrical work, the town may have issued building permits to authorize the improvements it later assessed and taxed.

¶ 148. Chairman Brudos had the ability to deliver what he had promised. He not only failed to deliver but also failed to mitigate the harsh effect of his change in position. He waged a campaign to obstruct the zoning change he once asserted was not necessary. It would be difficult to argue that Brudos was not acting in an official capacity when he informed Willow Creek that a zoning change was not needed. But if he were acting outside his official capacity, he would not enjoy governmental immunity. The circuit court did not decide whether Chairman Brudos was acting in his official capacity when he spoke to Willow Creek.

¶ 149. In my view, Willow Creek's allegations state a claim that County zoning officials and the Shelby Town Chairman breached ministerial duties. A breach of ministerial duty is not immune from suit under Wis. Stat. § 893.80(4). Because Willow Creek presented a valid claim in tort, its suit should not have been dismissed.

## SPECIAL RELATIONSHIP

¶ 150. There are several theories of municipal liability. McQuillin's *The Law of Municipal Corporations* (3rd ed. 1993), § 53.04.25, discusses the "public duty rule and the special relationship exception." McQuillin states:

The public duty rule provides that where a municipality has a duty to the general public, *as opposed to a particular individual*, breach of that duty does not result in tort liability. The rule protects municipalities from liability for failure to adequately enforce general laws and regulations, which were intended to benefit the community as a whole (emphasis added).

¶ 151. This court rejected the "public duty rule" in *Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 536–37, 247 N.W.2d 132 (1976), because it was too narrow. The court explained that when *Holytz* abrogated the immunity for local government torts, it effected a broad abrogation, not a narrow abrogation that applied only to persons with whom the local government was in privity.

¶ 152. Nonetheless, McQuillin's description of the special relationship *exception* to the public duty rule is useful because it is eerily descriptive of the factors at play in this case. McQuillin states:

The public duty rule does not protect a municipality where there was a "special relationship" between a public official and a particular individual that gave rise to a duty to that individual separate from the official's duty to the general public. . . .Special duties can be grounded in reliance, dependence, or the creation by the public entity of a known risk. Courts have identified a variety of criteria which help identify a special relationship. These criteria include the following: direct contact between municipal agents and the plaintiff; an assumption by the municipality, through promises or actions, of an affirmative duty to act on the plaintiff's behalf; knowledge by the municipal agent that inaction could lead to harm; the plaintiff's justifiable reliance on the municipal agent, occurrence of the

injury while the plaintiff is under the direct control of municipal agents, municipal action that increases the risk of harm, and the existence of a statute that imposes a duty to a narrow class of individuals rather than to the public at large.

*Id.* at 166.

¶ 153. In this case, there was a "special relationship" between Willow Creek and both the County zoning officials and the Shelby Town Chairman. Willow Creek went to these authorities to ask a specific question related to their core duties. They gave Willow Creek an answer. They knew that Willow Creek would rely on their representations and that reliance could lead to economic harm if their representations were wrong. Willow Creek's officers assert unequivocally that they would not have made the investment they did if they had not had official approval.

¶ 154. This court should adopt a "special relationship" rule for situations in which government actions or inactions do not constitute ministerial duties per se but the development of a "special relationship" has created a duty to perform in a specific manner.

## ESTOPPEL

¶ 155. Willow Creek also had a claim in equitable estoppel.

¶ 156. Justice Bablitch dissented in the *Kierstyn* case, 228 Wis. 2d at 100–105, asserting that "if a public officer or employee chooses, in his or her discretion, to undertake a task, he or she may have a ministerial duty to carry out that task in accord with given rules or statutes." *Id.* at 101. He cited *Chart v. Dvorak*, 57 Wis. 2d 92, 100–01, 203 N.W.2d 673 (1973) (relying on *Firkus v. Rombalski*, 25 Wis. 2d 352, 130 N.W.2d 835 (1964)).

¶ 157. In *Firkus*, an injured driver sued a municipality for failing to restore a stop sign at an intersection after the municipality learned that the sign had been removed by vandals. The circuit court ruled that the town "was charged with the duty of maintaining the stop signs so as to avoid a trap for motorists." 25 Wis. 2d at 358. This court upheld the circuit court, observing that:

> The town had no affirmative duty to erect the sign in the first instance, but having done so it was incumbent upon it to properly maintain the sign as a safety precaution to the traveling public *which has a right to rely* on its presence. . . .
>
> The potentiality of a dangerous situation is greatly increased by the failure to maintain warnings upon which the public *has come to rely*. It is the creation of *the right of reliance* and its protection which is the basis of the duty. *This is not unlike the doctrine of equitable estoppel in the field of contracts* (emphasis added).

*Id.* at 358–59.

¶ 158. The majority concedes that municipalities are not wholly immune from the doctrine of equitable estoppel. Majority op. at ¶ 49, citing *City of Milwaukee v. Milwaukee County*, 27 Wis. 2d 53, 66, 133 N.W.2d 393 (1965).[25] Yet, the circuit court here ruled other-

[25] In *City of Milwaukee v. Milwaukee County*, 27 Wis. 2d 53, 66, 133 N.W.2d 393 (1965), the court said: "In Wisconsin a municipal body is not immune from the application of the doctrine of estoppel and it makes no difference whether the activities are governmental. . .or proprietary." The court relied on *Lang v. Cumberland*, 18 Wis. 2d 157, 118 N.W.2d 114 (1962); *Park Bldg. Corp. v. Industrial Comm'n*, 9 Wis. 2d 78, 100 N.W.2d 571 (1960); *Milwaukee County v. Badger Chair & Fur-*

wise, saying that Wis. Stat. § 893.80(4) "provides immunity to municipal governments for their 'discretionary' actions relating to all causes of action, including. . .estoppel claims."[26] The circuit court cited *Johnson* and *Waukesha* as authority. The court of appeals never addressed the estoppel issue.[27]

¶ 159. This court cannot now assert that local governments are not wholly immune from estoppel claims without repudiating or at least explaining the *Johnson* case. The majority skips over this inconsistency, stating that it is well established that "erroneous acts or representations of municipal officers do not afford a basis to estop a municipality from enforcing zoning ordinances enacted pursuant to the police power." Majority op. at ¶ 49.

¶ 160. This statement has a history. In 1963, Justice George Currie wrote a concurring opinion in *Schober v. Milwaukee*, 18 Wis. 2d 591, 598, 119 N.W.2d 316 (1963), in which he stated: "A municipality should not be precluded by the acts of any municipal officers

*niture Co.*, 223 Wis. 118, 269 N.W. 659 (1936); *Eau Claire Dells Improvement Co. v. Eau Claire*, 172 Wis. 240, 179 N.W.2 (1920); *St. Croix County v. Webster*, 111 Wis. 270, 87 N.W. 302 (1911). *See also Fritsch v. St. Croix Cent. Sch. Dist.* 183 Wis. 2d 336, 515 N.W.2d 328 (Ct. App. 1994); *State v. City of Green Bay*, 96 Wis. 2d 195, 200–202, 291 N.W.2d 508 (1980); *Village of McFarland v. Town of Dunn*, 82 Wis. 2d 469, 263 N.W.2d 167 (1978); *Granis v. Melrose-Mindoro Jt. Sch .Dist.*, 78 Wis. 2d 569, 254 N.W.2d 730 (1977); *Harte v. Eagle River*, 45 Wis. 2d 513, 173 N.W.2d 683 (1970); *Galewski v. Noe*, 266 Wis. 7, 62 N.W.2d 703 (1954); *Libby, McNeill & Libby v. Department of Taxation*, 260 Wis. 551, 51 N.W.2d 796 (1952); *Marathon County v. Industrial Comm'n*, 225 Wis. 514, 272 N.W. 437 (1937).

[26] This is directly contrary to *Fritsch v. St. Croix Cent. Sch. Dist.*, 183 Wis. 2d 336, 344, 515 N.W.2d 328 (Ct. App. 1994).

[27] *Willow Creek v. Town of Shelby*, 224 Wis. 2d at 285.

from enforcing any ordinance enacted pursuant to the police power for the promotion of the general welfare." During the next term, Currie became the chief justice. In *Milwaukee v. Milwaukee Amusement, Inc.*, 22 Wis. 2d 240, 253, 125 N.W.2d 625 (1964), he wrote that, "Estoppel will not lie against a municipality so as to bar it from enforcing an ordinance enacted pursuant to the police power," citing his concurring opinion in *Schober*. Two years later in *Milwaukee v. Leavitt*, 31 Wis. 2d 72, 76–77, 142 N.W.2d 169 (1966), he reiterated that:

> While municipal and other government units are not wholly immune from application of the doctrine of equitable estoppel, this court is firmly committed to the principle that "estoppel will not lie against a municipality so as to bar it from enforcing an ordinance enacted pursuant to the police power."

The principal authorities cited were Justice Currie's opinion in *Milwaukee Amusement* and his concurrence in *Schober*.

¶ 161. In *Town of Richmond v. Murdock*, 70 Wis. 2d 642, 653–54, 235 N.W.2d 497 (1975), the Currie language was quoted again in the text and in a footnote. But this citation came almost as an afterthought. The case involved the operation of a commercial enterprise known as Kentwood Farm on land zoned agricultural. The commercial enterprise was developed after a comprehensive zoning ordinance had been enacted. After an evidentiary hearing, the circuit court issued an injunction to stop the operation. It rejected an estoppel claim by the defendant that the defendant had been told by the town board that "nothing in the ordinance" prohibited the planned use of the land. The circuit court noted that there was nothing in the town board minutes to support the defendant's contention.

The court specifically found that the evidence did not support the contention that such a statement was made by the town board. The defendant did not prove the facts necessary for estoppel. The circuit court decided the estoppel issue on the merits.[28]

¶ 162. In *Snyder v. Waukesha County Zoning Board*, 74 Wis. 2d 468, 247 N.W.2d 98 (1976), this court was asked to approve a use variance for a porch after the variance had been denied by the Waukesha County Zoning Board and the circuit court. Among his arguments, Snyder contended that he obtained a building permit for an addition to his house. A year later he decided to include a porch, which was not authorized by the permit. A building inspector told him to go ahead with construction and the inspector would take care of getting the permit. In a later discussion, the inspector had "an honest misunderstanding" as to how close the porch would be to the lot line, and so he again gave Snyder and his builder approval to go ahead. Snyder contended that he met the criteria for a variance because he did not himself create the hardship that prompted him to seek relief. He argued that the building inspector had created the hardship. The court replied that, "To allow this contention would constitute estoppel of the municipality from enforcing its zoning ordinance." *Id.* at 476.

> The rule of law in this state is clear that no such estoppel may arise against a municipality for the unauthorized acts of its officers. *Town of Richmond v. Murdock.. .Milwaukee v. Leavitt. . . .* Even if the

---

[28] The facts of the case show that Shawano County made extensive efforts to permit Kentwood Farm to operate with a conditional use permit. The circuit court found that Murdock violated the conditions.

> inspector issued a building permit, such a permit would have been void as issued for the structure which is forbidden by the ordinance. . . .[T]he mere statements or assurances of the building inspector cannot confer such a right. The appellant is charged with knowledge of the zoning ordinance.

*Id.* at 476–77. Significantly, the court inserted the phrase "unauthorized acts" of its officers into its test. It also stated that Snyder was charged with knowledge of the zoning ordinance.

¶ 163.　Here, the La Crosse County zoning officials were fully authorized to interpret the zoning ordinance. They made statements to Willow Creek, but they also must have had internal discussions as they learned of opposition to the game bird farm and as time passed. Still, they did nothing. Willow Creek cannot be expected to have had more knowledge of the ordinance than the experts who administered the ordinance.

¶ 164.　Both the zoning officials and the town chairman may testify that they never said or did what is alleged, or that they had an honest misunderstanding of what Willow Creek had in mind. But that possibility is of no consequence on a motion for summary judgment where Willow Creek alleged that these officials understood what they were doing.[29]

¶ 165.　In my view, if Willow Creek is able to prove its allegations, it should be able to estop the County from enforcing the zoning ordinance. *See Russell Dairy Stores v. Chippewa Falls*, 272 Wis. 138, 74 N.W.2d 759 (1956).[30]

---

[29] Apparently the majority court does not consider full knowledge of the Willow Creek situation by local officials as a relevant factor in estoppel.

[30] The majority attempts to distinguish *Russell Dairy Stores v. Chippewa Falls*, 272 Wis. 138, 74 N.W.2d 759 (1956),

¶ 166. An estoppel is a rule of substantive law that precludes a party from taking a particular legal position because of some impediment or bar recognized by the law.[31] One example is equitable estoppel. Equitable estoppel requires action or nonaction by one party that induces reliance by another party to the other party's detriment.[32] The reliance may play out in action or nonaction,[33] and the reliance must be reasonable[34] and justifiable.[35]

from the present case. First, the majority argues that the 1952 case was decided "prior to the formulation of the present immunity statute, Wis. Stat. § 893.80(4). The concept of immunity as a defense was not implicated in the case." Majority op. at ¶ 54. The bulk of this dissent is devoted to rebutting the premise of this argument. Second, the majority argues that *Russell Dairy Stores* is grounded on the distinction between the erroneous acts of the municipality and the erroneous acts of the municipality's subordinate officers. Majority op. at ¶¶ 55–56. This distinction is unpersuasive in the present case. The local officials here were the officials operating the zoning office and the Town Chairman acting in his official capacity. Finally, the majority argues that the permit in *Russell Dairy Stores* did not violate any law but in Willow Creek's case, "there is an asserted violation of the County zoning ordinance." Majority op. at ¶ 57. To date, Willow Creek has not been found in violation of the County zoning ordinance.

[31] W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 105, 733 (5th ed. 1984).

[32] *Kohlenberg v. American Plumbing Supply Co.*, 82 Wis. 2d 384, 396, 263 N.W.2d 496 (1978); *Chicago & Northwestern Transp. Co. v. Thoreson Food Products, Inc.*, 71 Wis. 2d 143, 153, 238 N.W.2d 69 (1976).

[33] *Kohlenberg*, 82 Wis. 2d at 396.

[34] *Chicago & Northwestern*, 71 Wis. 2d at 154.

[35] *Matter of Alexander's Estate*, 75 Wis. 2d 168, 183–84, 248 N.W.2d 475 (1977).

¶ 167. Equitable estoppel is not as readily available against a governmental unit as it is against a private party.[36] It is, though, available as a defense against the government "if the government's conduct would work a serious injustice and if the public's interest would not be unduly harmed by the imposition of estoppel."[37] Hence, to secure equitable estoppel against the government, a person must show, by clear and convincing evidence, that three facts are present: (1) action or nonaction which has induced, (2) reliance by a person, and (3) to the person's detriment. Thereafter, the person must persuade the court to determine that the injustice that might be caused if the estoppel is not applied outweighs the public interests at stake if the estoppel is applied.

¶ 168. This discussion is academic if Willow Creek and others similarly situated may *never* bring a suit for equitable estoppel against a local government under Wis. Stat. § 893.80(4), as the circuit court determined. Because the circuit court decision was wrong, there must be fact finding so that the circuit court can attempt to strike the balance described in *Department of Revenue v. Moebius Printing Co.*, 89 Wis. 2d 610, 638, 279 N.W.2d 213 (1979). That would require a remand in this case.

¶ 169. In a future hearing, Willow Creek might try to estop a forfeiture action, using estoppel almost like an entrapment defense, or it might try to estop a county injunction on equitable grounds. *See Forest*

[36] *Beane v. City of Sturgeon Bay*, 112 Wis. 2d 609, 620, 334 N.W.2d 235 (1983); *Ryan v. Department of Revenue*, 68 Wis. 2d 467, 470, 228 N.W.2d 357 (1975).

[37] *Beane*, 112 Wis. 2d at 620 (citing *Department of Revenue v. Moebius Printing Co.*, 89 Wis. 2d 610, 638, 279 N.W.2d 213 (1979)).

*County v. Goode*, 219 Wis. 2d 654, 579 N.W.2d 715 (1998). Willow Creek might also attempt to estop the local government from claiming statutory defenses in a traditional tort suit for damages.

¶ 170. This dissent does not seek to determine the ultimate outcome of this dispute. Local officials may win their case on the facts.

¶ 171. What local officials may not do is engage in a lengthy course of conduct that induces reasonable reliance and causes great detriment, and then expect to wash their hands and walk away without consequence. Because the majority believes otherwise, I dissent.

¶ 172. I am authorized to state that JUSTICE WILLIAM A. BABLITCH and JUSTICE N. PATRICK CROOKS join this dissenting opinion.